No. 20958.

DENVER-LARAMIE-WALDEN TRUCK LINE, INC., *v.*
DENVER-FORT COLLINS FREIGHT SERVICE, INC., ET AL.
(399 P.2d 242)

Decided February 23, 1965.

HAYS, THOMPSON and JOHNSTON, for plaintiff in error.

McNICHOLS, NEVANS, WALLACE & NIGRO, WENKE & JOHNSON, for defendant in error Denver-Fort Collins Freight Service, Inc.

DUKE DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT FULLERTON, Special Assistant, ROBERT N. TRUNK, Assistant, JOHN J. CONWAY, Assistant, for defendant in error The Public Utilities Commission.

ERNEST PORTER, ALVIN J. MEIKLEJOHN, JR., Amici Curiae.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

THE plaintiff in error, Denver-Laramie-Walden Truck Line, will be referred to as D-L-W; the defendants in error, The Public Utilities Commission and Denver-Fort Collins Freight Service, will be referred to as the PUC and Denver-Ft. Collins. D-L-W, the plaintiff below, brings error from the District Court's dismissal of its complaint.

The record discloses that D-L-W is a motor vehicle

common carrier transporting general commodities between Denver and Fort Collins; that the defendant, Denver-Ft. Collins is a motor vehicle private carrier also transporting commodities between Denver and Fort Collins; and that on January 14, 1963, Denver-Ft. Collins published a rate to be collected by it for the transportation of cucumbers in brine between Denver and Fort Collins.

Prior to the rates becoming effective, D-L-W filed with the PUC a petition for rejection of the rates in question filed by Denver-Ft. Collins. It contended that permitting such rates to go into effect would violate C.R.S. '53, 115-11-12, which requires the PUC to set minimum rates to be collected by private carriers at no lower than the rates prescribed for competing common carriers rendering substantially the same or similar service. The PUC permitted the challenged rate to become effective, but set for hearing a general investigation into the lawfulness of the rate. The hearing has not been held yet.

D-L-W, nevertheless, brought this action in the Denver District Court, alleging that Denver-Ft. Collins was a competing private carrier and that the published rates in question were lower than the rates of competing common carriers rendering the same or substantially similar service. The complaint asked that the trial court enter orders nullifying the rates in question and requiring Denver-Ft. Collins to collect from its shippers the difference between the rates it was collecting and the rates prescribed for common carriers. The defendants' motions to dismiss the complaint were granted, and D-L-W brought error.

The trial court's action in dismissing the complaint was clearly proper. C.R.S. '53, 115-6 outlines the procedures with respect to complaints concerning the reasonableness or lawfulness of rates. It also provides for investigations and hearings.

C.R.S. '53, 115-6-14, as amended by Chapter 199, Session Laws 1961 reads:

"* * * No cause of action arising out of any order or decision of the commission, nor any right to * * * review for the purpose of having the lawfulness of any such order or decision inquired into and determined, shall accrue in any court to any corporation or person, unless such corporation or person shall have made * * * application to the commission for a rehearing. * * *"

The record here shows that D-L-W has not exhausted its administrative remedies, for it has not awaited the decision of the PUC as to the legality of the rate. Furthermore, it has not complied with the mandatory requirement of applying for a rehearing. The latter requirement, of course, is not even possible until the hearing has produced a decision.

Our court has adhered rather strictly to the requirement of exhaustion of remedies. Where administrative remedies are provided by statute, the statutory procedure must be followed when the matter complained of is within the jurisdiction of the administrative authority. Unless the administrative remedies are exhausted, it can never be known but that a correction would ensue if the administrative authority were given full opportunity to pass upon the matter. *Heron v. City of Denver,* 131 Colo. 501, 283 P.2d 647.

The PUC, in the instant case, has yet to make at least two factual determinations under C.R.S. '53, 115-11-12: (1) whether the carriers compete, and (2) whether they render substantially the same or similar services. Should the Commission decide in favor of D-L-W, it would then have the duty of setting reasonable rates for the private carrier which could be no lower than common carrier rates, but which could be higher. C.R.S. '53, 115-3-2 vests in the PUC the sole authority to adopt rates. D-L-W has asked the District Court to perform functions which, by statute, have been committed to the

PUC. The legislature has directed that the initial determination of the factual questions shall be made by the PUC, and that all rates shall be set by the PUC. We are not at liberty to modify that command.

■ D-L-W argues, however, that it is seeking relief in the nature of mandamus, and that no exhaustion of administrative remedies is required. Mandamus is proper only where there is a legal duty to perform the act requested. From the above discussion it is clear that, at the time the suit was brought, the PUC had no clear legal duty to *reject* or *annul* the rates published by Denver-Ft. Collins which the plaintiff in error sought to have the trial court compel the PUC to do. Until the PUC had determined that the carriers involved were, in fact, competing carriers; and that the services for which the questioned rates were published were substantially the same or similar to those rendered by a competing common carrier, it had no duty to *reject* those rates. Under the circumstances here present, D-L-W had no right to relief in the nature of mandamus in the trial court. *Ahern v. Baker*, 148 Colo. 408, 366 P.2d 366.

■ Other sections of the Public Utilities Act provide for suspension of the proposed rates under certain circumstances pending hearing and decision by the PUC. But plaintiff in error, in the trial court, did not seek to invoke those provisions of the statute. Its purpose, as we have said, was to compel the PUC to *reject* the proposed rates by substituting the trial court for the PUC in the determination of the factual questions involved. This it cannot do.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE SCHAUER not participating.