COLORADO OFFICE OF CONSUMER COUNSEL, Petitioner–Appellant and Cross–Appellee,

v.

PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO, Edythe S. Miller, Andra Schmidt, and Ronald L. Lehr, as Commissioners thereof, and Mountain States Telephone and Telegraph Company, Respondents–Appellees,

and

AT & T Communications of the Mountain States, Inc., and Colorado Municipal League, Intervenors–Appellees.

COLORADO MUNICIPAL LEAGUE, Plaintiff–Appellee and Cross–Appellant,

v.

PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO, Edythe S. Miller, Andra Schmidt and Ronald L. Lehr, as Commissioners thereof, and Mountain States Telephone and Telegraph Company, Defendants–Appellees,

and

AT & T Communications of the Mountain States, Inc., Intervenor,

and

Colorado Office of Consumer Counsel, Intervenor–Appellant.

No. 86SA53.

Supreme Court of Colorado, En Banc.

March 14, 1988.

Anthony Marquez, Denver, for Colorado Office of Consumer Counsel.

Gorsuch, Kirgis, Campbell, Walker and Grover, Dudley P. Spiller, Jr., Joseph B. Wilson, Denver, for Colorado Mun. League.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mark A. Davidson, Eugene C. Cavaliere, Asst. Attys. Gen., Denver, for Public Utilities Comn.

Eiberger, Stacy & Smith, Steven H. Denman, Denver, for Mountain States Tel. and Tel. Co.

**VOLLACK, Justice.**

The Colorado Municipal League (League) and the Office of Consumer Counsel (Office) appeal the order of the Denver District Court affirming the decisions of the Public Utilities Commission (Commission) to permit tariff increases requested by Mountain States Telephone and Telegraph Co. (Mountain Bell) to go into effect. The League and the Office claim that the Commission abused its discretion in failing to hold formal hearings, in permitting the tariffs to become effective on less than thirty days notice, and in failing to consider test year data.[1] The Office makes the additional claim that the district court improperly dismissed its complaint for failure to exhaust administrative remedies. We affirm the judgment of the district court.

---

[1]. The League also argues that the rates were unreasonable and therefore in violation of section 40-3-106(1)(a), 17 C.R.S. (1984). The district court held that, while ATTCOM had raised this argument before the Commission, the League had not, and was therefore precluded under section 40-6-114(5), 17 C.R.S. (1984), from raising it before the court. The League countered that it had raised the issue in its applications for rehearing of the February 21 decisions.

In its applications for rehearing of the February 21 decisions, the League made two arguments: (1) the Commission must hold a hearing when parties protest a proposed tariff; and (2) the Commission failed to show good cause for permitting the proposed tariff to go into effect on less than the statutory notice required under section 40-3-104(1), 17 C.R.S. (1984). As part of its second argument, the League in both applications stated that "there is substantial reason to believe" that the respective tariffs are not just and reasonable. The statements that follow it are addressed to the issue of good cause under section 40-3-104(2), and are insufficient to raise the independent issue of whether the rates are

## I.

This appeal traces it origins to Advice Letter 1980 filed by Mountain Bell on December 7, 1984. Advice Letter 1980 sought to implement tariffs designed to produce annual revenue increases of approximately $19 million. The tariffs were sought to offset higher costs attributable to its implementation of Equal Life Group (ELG) depreciation methods and to its shortening of the amortization period of customer premises wiring (CPW) from seven to three years. The proposed effective date of Advice Letter 1980 was March 1, 1985.

Rather than holding a formal hearing, the Commission chose to conduct two days of informal meetings and notified all interested parties to that effect. Informal meetings were attended by Mountain Bell, the Office, the League, AT & T Communications of the Mountain States, Inc. (ATTCOM) and the Department of Defense on February 5–6, 1985. At the conclusion of these meetings, Mountain Bell modified its proposals by lowering the proposed tariffs to reflect concerns of the Office and the League. Mountain Bell withdrew Advice Letter 1980 and submitted the modified proposals (ELG tariff and CPW tariff) to the Commission. Both the League and the Office filed protests to the modified proposals and requested the Commission to hold a formal hearing on the matter.

On February 21, 1985, the Commission permitted the modified proposals to go into effect without a hearing. The ELG tariff and the CPW tariff were permitted to go into effect on March 1, which was less than the thirty days notice required by section 40–3–104(1)(a), 17 C.R.S. (1984).

On February 28, the League filed an application for "rehearing, reargument, or reconsideration" (rehearing) of the February 21 decisions pursuant to section 40–6–114, 17 C.R.S. (1984). On March 12, the Commission granted the League's application for rehearing of the February 21 decisions and issued two more decisions, which explained and modified its decisions of February 21. On March 29, the League filed an application for rehearing of the March 12 decisions, but that application was denied. Having exhausted its administrative remedies, the League filed a complaint in Denver District Court challenging the March 12 decisions.

On March 13, the Office filed an application for rehearing of the February 21 decisions. That request was denied. The Office did not file an application for rehearing of the March 12 decisions. Instead, it chose to challenge the March 12 decisions by filing a complaint in Denver District Court.

The district court consolidated the claims of the Office and the League. The court eventually dismissed the Office's claim for failure to exhaust administrative remedies and affirmed the Commission's decisions with respect to the League. Both the League and the Office appeal to this court pursuant to section 40–6–115(5), 17 C.R.S. (1984).

## II.

The district court held that it lacked jurisdiction to hear the Office's claims because the Office failed to apply for rehearing of the March 12 decisions. The Office claims that its failure to apply for rehearing of the March 12 decisions does not preclude it from seeking judicial review. In support of this position, the Office argues that it made a timely application for rehearing of the February 21 decisions, that the March 12 decisions were not substantial modifications of the February 21 decisions, and that it raised no argument to

unreasonable under section 40–3–106(1)(a). We conclude that the district court properly denied the League's request to raise this argument before the court. *See* § 40–6–114(5), 17 C.R.S. (1984); Bender, *Prosecuting an Appeal from a Decision of the Colorado Public Utilities Commission,* 16 Colo.Law. 2163, 2164 (1987).

In addition, the League argued for the first time in its opening brief to this court that the Commission engaged in selective updating when it granted the tariffs. This argument also is not properly before us. § 40–6–114(5); *People v. District Court,* 134 Colo. 324, 303 P.2d 692 (1956).

the district court other than those raised in its application for rehearing of the February 21 decisions. We conclude that failure to apply for rehearing of the March 12 decisions precludes the Office from seeking judicial review.

The Office and the Commission agree that section 40–6–114, 17 C.R.S. (1984) is the appropriate statute to consider in determining whether the Office can obtain judicial review of the March 12 decisions. The Office's interpretation of section 40–6–114, however, differs from that of the Commission. Our primary role is to construe statutes so as to effectuate the intent of the General Assembly. In ascertaining that intent, words and phrases should be given their plain and obvious meaning. *Englebrecht v. Hartford Accident & Indem. Co.*, 680 P.2d 231, 233 (Colo.1984).

A plain reading of subsections (1), (3) and (4) to section 40–6–114 reveals that the Office's failure to apply for rehearing of the March 12 decisions is a defect fatal to its petition for judicial review. Subsection (1) permits a dissatisfied party to dispute the Commission's decision by filing an application for rehearing within twenty days thereafter. Subsection (3) requires [2] the party to file a second application for rehearing of a decision reversing, changing or modifying the original decision within the time specified in subsection (1). Subsection (4) permits the party whose application for rehearing is denied to enforce, suspend, modify or set aside the decision "in a district court of the state of Colorado,

as set forth in this article, *but not otherwise.*" § 40–6–114 (emphasis added). The clear import of these subsections is that failure to apply for rehearing of the March 12 decisions modifying the February 21 decisions precludes the Office from setting aside the March 12 decisions in district court. *See Public Util. Comm'n v. Northwest Water Corp.*, 168 Colo. 154, 167, 451 P.2d 266, 272 (1969); Bender, *Prosecuting an Appeal from a Decision of the Colorado Public Utilities Commission*, 16 Colo. Law. 2163, 2164 (1987).

■ Contrary to the claims of the Office, section 40–6–114(3) does not require a subsequent decision to be a substantial modification of the original decision. Section 40–6–114(3) provides:

If after rehearing, reargument, or reconsideration of a decision of the commission it appears that the original decision is in any respect unjust or unwarranted, the commission may reverse, change, or modify the same accordingly. Any decision made after rehearing, reargument, or reconsideration, reversing, changing, or modifying the original decision, shall be subject to the same provisions with respect to rehearing, reargument, or reconsideration as an original decision....

17 C.R.S. (1984). The Commission modified its February 21 decisions by explaining more fully in the March 12 decisions its reasons for the new tariffs.[3] These modifications could have been challenged by the

---

**2.** That an application for rehearing following reversal, change or modification of a decision is required follows from the presence of the word "shall" in subsection (3). *See, e.g., People v. Clark*, 654 P.2d 847 (Colo.1982).

**3.** The Office claims that the March 12 decisions do not rise to the level of a modification requiring an application for rehearing because they "are fairly characterized as nothing more than additional rationalizations intended to bolster the Commission's February 21 decisions." The Office cites no authority for this proposition. Indeed, section 40–6–114 contradicts this proposition. Subsection (3) states that a second decision could "reverse, change, or modify" the original decision, which implies that a second deci-

sion could modify the reasoning of the original decision without changing its result. When possible, a statute must be interpreted so as to give effect to each word it contains. *Colorado Gen. Assembly v. Lamm*, 700 P.2d 508 (Colo.1985).

In addition, the Office's claim that the March 12 decisions did not modify the February 21 decisions because the Commission failed to find that the February 21 decisions were "unjust or unwarranted" is rejected in *Denver Clean–Up Serv., Inc. v. Public Util. Comm'n*, 174 Colo. 329, 483 P.2d 974 (1971).

Finally, the Office's claim that by making an application for rehearing of the February 21 decisions, it complied with both the letter and spirit of section 40–6–114, is simply unfounded. The letter of section 40–6–114 requires a party

Office simply by filing a second application for rehearing. All of the Commission's decisions denying rehearing of the February 21 and March 12 decisions included reminders to the parties of the twenty day requirement of section 40–6–114(1). The League filed a second application for rehearing and exhausted its administrative remedies, while the Office did not. Failure to exhaust administrative remedies precludes a party from seeking judicial review of an administrative decision. *Colorado Mun. League v. Public Util. Comm'n,* 197 Colo. 106, 118, 591 P.2d 577, 585 (1979); *Public Util. Comm'n v. Poudre Valley Rural Elec. Ass'n,* 173 Colo. 364, 480 P.2d 106 (1970); *Denver–Laramie–Walden Truck Line, Inc. v. Denver–Ft. Collins Freight Serv., Inc.,* 156 Colo. 366, 399 P.2d 242 (1965).

The district court properly dismissed the Office's claims for failure to exhaust administrative remedies.

### III.

■ The League contends that the Commission abused its discretion by failing to hold a formal hearing when it permitted the tariffs to go into effect. It argues that a reading of section 40–6–109(5) together with Rule 17 of the Commission's Rules of Practice and Procedure requires the Commission to hold a formal hearing whenever a timely protest is filed. The Commission argues that neither section 40–6–109(5) nor Rule 17 is apposite, and that the appropriate statutory authorities, section 40–6–111(1)(a) and Rule 18 of the Commission's Rules of Practice and Procedure, make the

decision to hold a hearing discretionary. We conclude that the Commission was not required to hold a hearing when it permitted the tariffs to go into effect.

Section 40–6–111 vests the Commission with discretion to conduct a hearing when a tariff request is filed. Subsection (1)(a) provides in pertinent part:

**40–6–111. Hearing on schedules—suspension—new rates—rejection of tariffs.** (1)(a) Whenever there is filed with the commission any tariff ... the commission has power ... upon reasonable notice, to have a hearing concerning the propriety of such rate ... if it believes that such a hearing is required and that such rate ... may be improper.

We explained the relationship between sections 40–6–111 and 40–6–109 in *Public Serv. Co. v. Public Util. Comm'n,* 653 P.2d 1117 (Colo.1982).

Colorado has a "file and suspend" system of public utility ratemaking. The procedure is initiated by the utility's filing of tariffs with the Commission setting forth the proposed new rates. If the Commission does not suspend the rates, they go into effect automatically in thirty days, or in a lesser time if the Commission so orders. Section 40–6–111(2), C.R.S. 1973. The Commission *may,* however, order a hearing and suspend the tariffs for two periods not exceeding an aggregate of 210 days. *If a hearing is ordered,* all parties are "entitled to be heard, examine and cross-examine witnesses, and introduce evidence." Section 40–6–109(1), C.R.S. 1973.

to make a new application for rehearing after each Commission decision as a prerequisite to judicial review. *Public Util. Comm'n v. Northwest Water Corp.,* 168 Colo. 154, 167, 451 P.2d 266, 272 (1969). The spirit of section 40–6–114, which is its underlying purpose, requires applicants to offer the Commission a full opportunity to pass upon the matter and to correct whatever errors might have ensued. *Denver–Laramie–Walden Truck Line, Inc. v. Denver–Ft. Collins Freight Serv., Inc.,* 156 Colo. 366, 370, 399 P.2d 242, 243 (1965). In denying the Office's application for rehearing of the February 21 decisions, the Commission confined its review to the issues raised by the February 21 decisions and

properly ignored issues raised by the March 12 decisions such as whether the time and cost to Mountain Bell and the Commission in "reworking the numbers" is an appropriate factor to consider in allowing the tariffs to become effective on less than statutory notice. By failing to raise this issue before the Commission through an application for rehearing, the Office did not give the Commission a full opportunity to pass on the matter and correct whatever errors might have ensued, which does not comport with the spirit of section 40–6–114.

*Id.* at 1121 (citation omitted) (emphasis added).

The League nevertheless contends that section 40–6–109(5) is the controlling statute.[4] Section 40–6–109(5) describes procedures for the taking of evidence in noncontested or unopposed proceedings. It is an inappropriate vehicle for requiring a hearing in this contested proceeding because it refers to noncontested or unopposed proceedings. Rule 17 of the Commission's Rules of Practice and Procedure is similarly inapposite, because, as its title indicates, the rule applies to noncontested proceedings.[5]

The appropriate rule to consider is not Rule 17, but Rule 18 of the Commission's Rules of Practice and Procedure, 4 C.C.R. 723–1 (1987). Rule 18(I)(A)(4) permits the Commission to suspend the effective date of a contested tariff proposal if the tariff warrants additional investigation "in the discretion and judgment of the Commission." Rule 18(I)(A)(5) states: "[T]he Commission may, in its own discretion and judgment ... grant permission for rates and tariffs to become effective without formal hearing and without requiring the thirty days' notice...." 4 C.C.R. 723–1 at 14.

██ The unambiguous language of section 40–6–111 and Rule 18, and the cases construing them, support the conclusion that the Commission is vested with discretion to refuse to hold a hearing before

permitting a proposed tariff to go into effect. Accordingly, we conclude that the district court correctly held that the Commission did not abuse its discretion in refusing to grant the League's request for a hearing.

## IV.

### A.

██ The League claims that the Commission abused its discretion in permitting the tariffs to become effective on less than thirty days notice because it failed to show good cause under section 40–3–104(2) for expediting the effective date. The League argues that the power of the Commission to expedite the effective date of a proposed tariff is a "narrow and extraordinary exception" to the due process rights granted in section 40–3–104 that can be exercised only "in unusual or emergency circumstances." The League proposes that good cause, in the context of public utilities proceedings, requires a "showing of extraordinary circumstances, either unique or urgent." We do not agree.

New tariffs generally require at least thirty days notice before becoming effective. § 40–3–104(1)(a), 17 C.R.S. (1984). Subsection (2) of section 40–3–104 permits the Commission to expedite the effective date of a proposed tariff "for good cause shown."[6] Rule 18(I)(A)(5) of the Commission's Rules of Practice and Procedure, 4

---

**4.** Section 40–6–109(5) states:

The commission may by general rule or regulation provide for the taking of evidence in noncontested or unopposed proceedings by affidavit or otherwise, without the necessity of a formal oral hearing. Such shortened or informal proceedings shall otherwise be subject to all of the provisions of articles 1 to 13 of this title. Upon its own motion the commission may and upon request of a party timely made the commission shall assign any such noncontested or unopposed proceeding for hearing.

**5.** Rule 17 states in pertinent part:

**Noncontested Proceedings**

If an Applicant does not request a public hearing, and no protests, objections or petitions to intervene have been filed within the

time specified in the notice of the application filed, such matter may be determined by the Commission without a formal oral hearing and without further notice....

**6.** Sections 40–3–104(1)(a) and –104(2) state:

**40–3–104. Changes in rates—notice.** (1)(a) In the case of a public utility other than a rail carrier, unless the commission otherwise orders, no change shall be made by any public utility in any rate, fare, toll, rental, charge, or classification or in any rule, regulation, or contract relating to or affecting any rate, fare, toll, rental, charge, classification, or service or in any privilege or facility, except after thirty days' notice to the commission and the public.

....

(2) The commission, for good cause shown, may allow changes with less notice than is

C.C.R. 723-1 (1987), sets forth guidelines for the Commission to follow in permitting tariffs to become effective on less than thirty days notice. These guidelines include the amount of the previous tariffs, the amount of the proposed tariffs, the "circumstances and conditions" relied upon in expediting the effective date, and prior relevant Commission proceedings. 4 C.C.R. 723-1 at 14.

■ We are guided by the following rules in determining whether the Commission had good cause to permit the tariffs to become effective on less than thirty days notice. In reviewing decisions of the Commission, the record must be reviewed as a whole. *Rocky Mountain Natural Gas Co. v. Public Util. Comm'n,* 199 Colo. 352, 617 P.2d 1175 (1980). The Commission's findings of fact need not be presented in any particular form, and may be implied from other facts. *Caldwell v. Public Util. Comm'n,* 692 P.2d 1085, 1088 (Colo.1984). Such findings are presumed to be valid, *City of Montrose v. Public Util. Comm'n,* 629 P.2d 619 (Colo.1981), and must be viewed in the light most favorable to the Commission's decisions. *Home Builders Ass'n v. Public Util. Comm'n,* 720 P.2d 552, 560 (Colo.1986). Findings of the Commission concerning disputed questions of fact are generally not subject to judicial review, and will not be set aside because the evidence is conflicting, or because conflicting inferences can be drawn from the

evidence. *Morey v. Public Util. Comm'n,* 629 P.2d 1061 (Colo.1981). Such findings will be set aside only if the record lacks competent evidence to support them. *Colorado Mun. League v. Public Util. Comm'n,* 687 P.2d 416, 419 (Colo.1984).

■ The record reveals competent evidence to support the conclusion that the Commission considered all of the factors described in Rule 18(I)(A)(5) in some or all of its decisions of February 21, March 12 and April 9, 1985. In particular, the Commission made several findings of fact concerning the circumstances and conditions that justified its decisions to expedite the effective date of the ELG tariff and the CPW tariff.

The Commission found three circumstances and conditions to justify its decision to expedite the effective date of the ELG tariff. First, the ELG tariff would align state and federal depreciation methods.[7] Second, the ELG tariff would "produce a more accurate measure of actual depreciation and [would] assist Mountain Bell in modernizing plant to meet public demands for improved service." Third, making the ELG tariff effective on March 1 would save Mountain Bell and the Commission money and time by avoiding recomputation of various cost and revenue projections that were made after the February 5-6 informal meetings.

The Commission found five circumstances and conditions justifying its decision to

required by subsection (1) of this section by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

7. The FCC in 1980 and 1981 revised its depreciation rules for telephone utilities by adopting ELG depreciation methods as a more accurate measure of actual depreciation. *In Re Amendment of Part 31,* 83 F.C.C.2d 267 (1980), *reconsideration denied,* 87 F.C.C.2d 916 (1981). Colorado and other states rejected the use of ELG depreciation methods, and the FCC responded by issuing an order declaring that the federal scheme preempted state depreciation methods inconsistent with federal ELG depreciation methods. *In Re Amendment of Part 31,* 92 F.C.C.2d 864 (1983), *aff'd sub nom. Virginia State Corp. Comm'n v. FCC,* 737 F.2d 388 (4th Cir.

1984). The *Virginia State* decision was itself overruled in *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), which held that the FCC regulation does not preempt state regulations of depreciation methods for purposes of intrastate ratemaking.

At the time the League protested the Commission's decisions, certiorari in the *Virginia State* case was pending before the United States Supreme Court. Mountain Bell in its application for the ELG tariff agreed to refund with interest any funds collected in the event the Supreme Court later invalidated the FCC regulation. The Commission recognized this possibility as part of its findings in its February 21 ELG tariff decision.

expedite the CPW tariff. First, the CPW tariff would benefit Colorado ratepayers because shortening the amortization period would permit Mountain Bell to shift a greater portion of CPW costs to the interstate jurisdiction than would be possible under the previous tariff. Second, the faster write-off associated with a shorter amortization period would generate long run savings to ratepayers because the cost of the initial investment would be more quickly removed from the rate base. Third, the FCC had already granted a similar request to Illinois Bell pending Illinois Commission approval of the rate hike; granting the CPW tariff would accelerate FCC approval of the shortened amortization period. Fourth, the CPW tariff would relieve a class of customers of the disproportionate share of the cost of consumer premises wiring that the previous tariff had imposed. Finally, making the CPW tariff effective on March 1 would save time and money by avoiding the problem of "reworking the numbers" to reflect cost and revenue projections affected by changing the effective date of the tariff.

These circumstances and conditions demonstrate that the Commission complied with section 40–3–104(2) and Rule 18(I)(A)(5), and thereby had good cause to permit the ELG tariff and the CPW tariff to become effective on less than thirty days notice.

### B.

The League contends that these findings by the Commission are nevertheless insufficient to demonstrate "good cause shown."

In its view, good cause is analogous to the term "special circumstances" described in Rule 31, section I(g) of the Commission's Rules of Practice and Procedure, 4 C.C.R. 723–3 (1977)[8] and interpreted in *Home Builders Ass'n v. Public Util. Comm'n,* 720 P.2d 552 (Colo.1986).[9]

In *Home Builders,* the Commission in the course of an adjudicative hearing extensively revised Rule 31 to establish an embedded investment plan for calculating a free construction allowance in connection with the construction of certain facilities. Such a revision of Rule 31 is a *de facto* rule-making function.[10] We held that the Commission in the course of an adjudicatory proceeding could not alter, modify or amend its own rule except "when there is a truly special circumstance, peculiar to the particular case and clearly supported by the evidence," and that even then it could do so "only to the extent necessary under the facts of the case." *Id.* at 562. Because we determined that the Commission during an adjudicatory proceeding had acted in its rule-making capacity without following the statutory requirements of rule-making, we concluded that the Commission had not regularly pursued its authority. *Id.*

By contrast, the Commission here is acting in its rate-making capacity in compliance with the appropriate statutory requirements. The unique procedural posture of *Home Builders* makes the special circumstances standard of *Home Builders* inappropriate to the facts of this case.

The record reveals competent evidence supporting the district court's finding that

**8.** The "special circumstances" exception of section I(g) of Rule 31 states in pertinent part:

Nothing in [Rule 31] shall be construed to preclude the Commission from relieving any electric utility from the obligation imposed by its extension policy in accordance with [Rule 31] should the special circumstances of the case warrant such relief nor to preclude the Commission from altering, modifying or amending this rule from time to time as the Commission may deem necessary or advisable.

4 C.C.R. 723–3 at 13 (quoted in *Home Builders Ass'n v. Public Util. Comm'n,* 720 P.2d 552, 557 (Colo.1986)).

**9.** *See generally* Annotation, *What Constitutes "Good Cause" Under Provisions of Administrative Procedure Act (5 USCS § 553(d)(3)) Allowing Agency Rule to Become Effective Less Than 30 Days After Publication,* 55 A.L.R.Fed. 880 (1981).

**10.** *See* § 24–4–102(16), 10 C.R.S. (1984) (Rule-making is an "agency process for the formulation, amendment, or repeal of a rule").

the Commission showed good cause in permitting each of the tariffs to go into effect on less than thirty days notice. We conclude that the district court properly held that the Commission complied with the statutory requirements of section 40–3–104(2) and Rule 18(I)(A)(5) in expediting the effective date of the tariffs.

## V.

■ The League claims that the Commission did not regularly pursue its authority in permitting the tariffs to go into effect without considering test year data for Mountain Bell. It argues that consideration of test year data is required by case law and by statute.[11] The Commission concedes that it did not review test year data in granting the tariffs, but contends that such a review is not required.

In deciding whether the Commission must consider test year data, we acknowledge that the scope of judicial review of administrative decisions is limited by section 40–6–115(3), 17 C.R.S. (1984), to three concerns: whether the Commission has regularly pursued its authority, whether its decisions are just and reasonable, and whether its conclusions are in accordance with the evidence.[12] Whether the Commission has regularly pursued its authority

depends, in turn, on whether its order is based upon evidence introduced before it and supported by findings of fact, whether it applied the appropriate legislative standards, and whether it acted within the authority conferred upon it. *Public Util. Comm'n v. Northwest Water Corp.*, 168 Colo. 154, 169, 451 P.2d 266, 273–74 (1969).

Test year data are derived by examining the relationships among revenue, cost and investment for a utility for a given year. These relationships are generally constant and reliable, and form the basis for calculating fair and reasonable rates. §§ 40–3–111(1) and 40–6–111(2)(a), 17 C.R.S. (1984). From test year data a rate of return on investment is calculated that is reasonable to investors yet not so high as to be exorbitant. *Colorado Mun. League v. Public Util. Comm'n*, 687 P.2d 416 (Colo.1984); *Colorado Ute Elec. Ass'n v. Public Util. Comm'n*, 198 Colo. 534, 602 P.2d 861 (1979).

Although consideration of test year data is desirable in balancing the interests of investors and consumers, neither statutory law nor our case law requires the Commission to review such data before granting a proposed tariff. Section 40–3–111(1) states that, in making a determination of whether a tariff is unjust, unreasonable or discriminatory,

So far as necessary to the decision and where presented, the district court shall decide all relevant questions of law and interpret all relevant constitutional and statutory provisions. The review shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the decision under review violates any right of the petitioner under the constitution of the United States or of the state of Colorado, and whether the decision of the commission is just and reasonable and whether its conclusions are in accordance with the evidence.

Section 40–6–115(5) states in pertinent part: Appellate review may be obtained in the supreme court concerning any final judgment of the district court on review, affirming, setting aside, or modifying any decision of the commission, in the same manner and with the same effect as appellate review of judgments of the district court in other civil actions.

11. In support of its contention that the Commission is required to consider test year data, the League invokes the maxim of statutory construction of *expressio unius est exclusio alterius*, that is, the expression of one thing excludes another. This argument is without merit. Maxims of construction are not invoked where the meaning of the statute is plain. *See* 2A *Sutherland Statutory Construction* § 46–01 (4th ed. 1984). Here sections 40–3–111(1) and 40–6–111(2)(a) plainly state that the Commission "may" consider test year data as well as "any other factors which may affect the sufficiency or insufficiency of such rates." This maxim is properly invoked to support the inference that one should disregard factors excluded from the statute, but does not support the inference that one is *obliged* to consider factors listed in the statute. *Id.* § 47.23.

12. Section 40–6–115(3) provides:
Upon review, the district court shall enter judgment either affirming, setting aside, or modifying the decision of the commission.

the commission *may* consider current, future, or past test periods or any reasonable combination thereof *and any other factors which may affect the sufficiency or insufficiency* of such rates, fares, tolls, rentals, charges, or classifications during the period the same may be in effect, and may consider any factors which influence an adequate supply of energy and any factors which encourage energy conservation.

17 C.R.S. (1984) (emphasis added). The identical passage appears in section 40–6–111(2)(a).

Our cases have likewise approved but not required use of test year data in permitting rate hikes to go into effect. *See Colorado Mun. League,* 687 P.2d at 423; *Colorado Ute Elec. Ass'n,* 198 Colo. at 539, 602 P.2d at 864; *Mountain States Tel. & Tel. Co. v. Public Util. Comm'n,* 182 Colo. 269, 275, 513 P.2d 721, 724 (1973). In addition, we have upheld Commission decisions making limited use of "one-sided adjustments" to test year data by adjusting for an item that reduced costs while refusing to make corresponding adjustments for items which increased costs. *Colorado Ute Elec. Ass'n,* 198 Colo. at 539, 602 P.2d at 863. Such a decision was justified because the legislature has vested the Commission with "considerable discretion in its choice of means to fix rates," because the adjustments were supported by competent evidence, and because the important factor in determining whether a rate is just and reasonable "is the result reached, not the method employed." *Id.,* 602 P.2d at 864 (citing *Federal Power Comm'n v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944)).

Here the Commission's decisions to permit the tariffs to go into effect were supported by findings of fact and approved by the district court. First, the findings of circumstances and conditions that justified the Commission's decisions to permit the tariffs to become effective on less than thirty days notice provide equal justification for the decision to permit the tariffs to go into effect without considering test year data. Second, as the district court noted, the Commission found in its March 12 and April 9 decisions that granting the tariffs would not affect Mountain Bell's operating earnings, in that "the Commission is allowing Mountain Bell to recapture costs incurred." The district court characterized these tariffs as "routine cost adjustments" in furtherance of the Commission's obligations under section 40–3–102, 17 C.R.S. (1984), to adopt all necessary rates in order to correct abuses.[13]

Finally, in *Re Mountain States Tel. & Tel.,* 74 P.U.R.4th 724 (Colo.PUC 1986), decided after this appeal was initiated, the Commission as part of a general rate case examined Mountain Bell's statements of revenue, expense and investment in order to establish 1985 test year data. The data necessarily included expenses attributable to ELG depreciation and shortening the CPW amortization period. Because it had only prospective effect, that decision does not render the question of test year data moot in this case. It does, however, limit the impact of the Commission's decision not to consider test year data in this case by its subsequent review of test year data.[14]

"As this Court has repeatedly emphasized, rate-making is not an exact science,

---

**13.** Section 40–3–102 states in pertinent part:

**Regulation of rates—correction of abuses.** The power and authority is hereby vested in the public utilities commission of the state of Colorado and it is hereby made its duty to adopt all necessary rates, charges, and regulations to govern and regulate all rates, charges, and tariffs of every public utility of this state to correct abuses; to prevent unjust discriminations and extortions in the rates, charges, and tariffs of such public utilities of this state; to generally supervise and regulate every public utility in this state; and to do all things,

whether specifically designated in articles 1 to 7 of this title or in addition thereto, which are necessary or convenient in the exercise of such power, and to enforce the same by the penalties provided in said articles through proper courts having jurisdiction; ...

**14.** Following the *Mountain States* opinion, the Commission ordered an immediate refund of revenues collected under authority of the ELG tariff decisions of February 21 and March 12.

but a legislative function involving many questions of judgment and discretion." *Colorado Ute Elec. Ass'n v. Public Util. Comm'n,* 198 Colo. 534, 539, 602 P.2d 861, 864 (1979) (citing *Public Util. Comm'n v. Northwest Water Corp.,* 168 Colo. 154, 451 P.2d 266 (1969)). Because the Commission made findings of fact which are supported by competent evidence in the record, and because of the permissive character of the relevant statutes, we conclude that, considering the particular facts involved, the Commission has regularly pursued its authority in permitting the ELG tariff and the CPW tariff to go into effect without considering test year data. We therefore may not set aside the Commission's order. § 40–6–115(3), 17 C.R.S. (1984).

The judgment of the district court is affirmed.