The BOARD OF COUNTY COMMISSIONERS OF LA PLATA COUNTY, Colorado, Petitioner,

v.

Thomas MOGA and Diedra Moga, Respondents.

No. 96SC576.

Supreme Court of Colorado, En Banc.

Nov. 10, 1997.

---

McLachlan & Goldman, LLC, Michael E. McLachlan, Jeffery P. Robbins, Durango, for Petitioner.

Abadie & Zimsky, Lon W. Abadie, William E. Zimsky, Durango, for Respondents.

Justice KOURLIS delivered the Opinion of the Court.

This case raises the question of whether a dispute concerning a building variance issued by the La Plata County Board of Adjustments (BOA) must first be raised with the BOA itself rather than with the district court. Thomas and Diedra Moga brought a declaratory judgment action against the Board of Commissioners of La Plata County seeking a ruling that a variance issued by the BOA did not contain a height restriction. The trial court dismissed the complaint on the grounds of lack of subject matter jurisdiction because the Mogas had failed to exhaust the administrative remedies available through the BOA prior to seeking judicial relief. The court of appeals reversed the trial court. *See Moga v. Board of Comm'rs*, No. 95CA0516 (Colo.App. June 16, 1996). We granted certiorari to consider whether the Mogas improperly failed to seek administrative relief from the BOA prior to pursuing judicial review.[1] Because we conclude that issues raised by the Mogas concern administration and enforcement of zoning resolutions and must therefore first be heard by the BOA, we reverse the decision of the court of appeals.

## I.

The Mogas own a 20-foot by 60-foot tract of land on Lake Vallecito in La Plata County (the County). The tract is bordered on the

---

1. The issues on which this court accepted certiorari are (1) "Whether the issuance of a Stop Work Order (red-tag) to a Building Permit holder by the County Building Inspector is a decision by an administrative officer who is enforcing the County Zoning Resolution, as defined by C.R.S. § 30–28–118, which requires that any challenge to the issuance of the Stop Work Order first be heard by the Board of Adjustment," and (2) "Whether the Board of Adjustment has jurisdiction to hear a challenge to the revocation of an earlier issued Building Permit."

north, south and east by property owned by the United States and on the west by the County's right-of-way for County Road 501. In late 1990, the Mogas sought a variance from the BOA from all lot line setbacks to allow for the construction of a single-family residence on the entire area of their lot in place of a smaller existing cabin.[2] The BOA denied the 1990 variance application because it found that the Mogas had failed to demonstrate the hardship they would endure if they were required to build a smaller structure in compliance with applicable setbacks.[3]

On October 2, 1991, the Mogas reapplied for a variance, seeking permission to construct an approximately 2000 square foot, two-story, single-family residence that would encroach on front and rear setback requirements.[4] Prior to submitting their second application, the Mogas sent a letter dated August 15, 1991 addressed to "all surrounding land holders."[5] In the letter, Mr. Moga stated, "[T]he new cabin will be the same size [as the existing cabin], (20 ft by 40 ft) with a basement and a loft. Since my cabin sits so low, it shouldn't affect anyones [sic] view."

As part of the variance request process, the La Plata County Department of Planning Services (Planning Services) reviewed the Mogas' application. Based upon this review, Planning Services submitted a report to both the BOA and the Mogas. The staff report observed that "one letter and several phone calls have been received [by Planning Services] from adjacent landowners on this project. Their main concern is obstruction of the views of the lake. The County has no building height restrictions." The report ultimately recommended granting the Mogas' setback variance, with the proviso: "A condistions [sic] of any approval of this variance should include all representations of the ap-

plicant are conditions of approval and that the applicant meet any and all requirements of the La Plata County Building Department."

The BOA set the application for public hearing on October 29, 1991 and began the hearing at that time. However, the BOA continued the hearing until November 26, 1991 because the Mogas had not supplied all of the necessary information.[6] The County Planner notified the Mogas and their builder/agent of the continuance by letter dated October 30, 1991. In her letter, the County Planner explained that the BOA needed more information on the project, including, among other things, a set of building plans for the Mogas' proposed house. By letter dated November 6, 1991, Mr. Moga expressed his objection to investing money in building plans prior to the granting of the variance. He represented that he would provide building plans if the BOA approved the variance and further represented that "the cabin I am planning to build would be a two story (18 feet high)."

At the November 26, 1991 hearing, Commissioner Brown, who was then a member of the BOA, noted that adjacent property owners opposed the variance because of concerns that the Mogas' building would obstruct or compromise their views of Lake Vallecito. The County Planner reported that the property owners residing on the opposite side of County Road 501 objected to the height of the proposed building (then represented by the Mogas to be eighteen feet). At the conclusion of the hearing, the BOA voted to grant the variance subject to six enumerated conditions, one of which was that "[a]ll representations of the applicant are deemed conditions of approval."

---

2. Section 6.3.18 of the La Plata County Permit System (June 1990)(Permit System), required a minimum of twenty feet between the front property line of the parcel and any structure and a distance of ten feet between the side and rear property lines and any structure. *See* Permit System § 6.3.18(B)(1), (2) (1990).

3. Hardship is one of seven criteria that the BOA must find in order to authorize a variance. *See* Permit System § 7.9(F)(1)–(7) (1990).

4. The second variance application was different from the first only in that it did not seek a variance from the side setback requirements.

5. The Mogas included a copy of their August 15, 1991 letter when they submitted their variance application to the Planning Office.

6. The Mogas did not personally appear at either hearing but were represented at the proceedings by their builder/agent, Larry Zufelt.

In late 1992, the Mogas applied to the Building Department for a building permit and submitted building plans with their application.[7] The plans reflected a building in excess of eighteen feet in height.[8] Upon receipt of the plans, the La Plata Plans Examiner/Building Inspector wrote to the Mogas' architect to express several concerns about the Mogas' building permit application. The letter, dated December 28, 1992, provided in pertinent part:

> With regard to the 5th condition of approval [of the variance], I find in Mr. Mogas' letter of November 6, 1991 and in Mr. Zufelts' statements to the Board through his application indicate that a two story 18 foot high structure was approved. The plans submitted are for a two story structure (w/ basement) which scale in excess of 32 feet in height.
>
> In as much as all public comment received through the variance process dealt with building height and views from adjacent property the height of the building is a concern. Mr. Moga indicated that the existing one story was 12 feet high and that the proposed two story would be 18 feet high.
>
> It is my belief that the proposed structure is significantly different from that which was approved warranting either redesign or another trip through the Land Use variance process.

The record does not reveal whether the Mogas responded to this letter or whether any other negotiations occurred. However, despite the concerns raised by the Plans Examiner/Building Inspector, the Building Department issued a building permit to the Mogas on April 2, 1993.

After the Mogas began construction, the La Plata County Director of Building and Safety received more than eighteen letters from local home and business owners all complaining that the height of the Mogas' building exceeded what the Mogas had represented and that the building obstructed their views of Lake Vallecito.

On December 8, 1993, the Building Department issued a stop work order and "red-tagged"[9] the building. The Building Department wrote the Mogas a letter dated December 16, 1993, explaining that it had issued the stop work order because the Mogas' representations to the BOA during the variance application process concerning the eighteen-foot height of the building constituted a self-imposed height limitation. This limitation was incorporated as condition 5 of the variance. Thus, according to the Building Department, the BOA's variance was subject to the eighteen-foot height restriction. The Building Department suggested that the Mogas consider removing the upper story to bring the structure into compliance with the height limitation or consider any variance options that might be allowed under the Permit System. In addition, the Building Department gave the Mogas the name of a person who could provide information about the procedures for appealing the order. The Building Department also encouraged the Mogas to contact the Planning Office to discuss the issue and, if necessary, to seek a variance from the height limitation. The Mogas pursued none of the avenues for relief identified in the Building Department's letter.

Rather, in April of 1994, the Mogas brought a declaratory judgment action against the La Plata County Board of Commissioners (Commissioners) in which they sought a ruling from the court that the variance did not include a height restriction. The Commissioners filed a motion to dismiss, arguing, among other things, that the district court was without jurisdiction because the Mogas had failed to exhaust their administrative remedies. The Commissioners asserted that the Mogas were required to appeal the issuance of the stop work order to the BOA prior to seeking judicial relief. The trial court agreed that the Mogas had failed to

---

7. The Mogas never provided the BOA with building plans after the variance was granted.

8. The Building Permit that was issued does not state the height of the building approved, and the building plans were not entered into the record.

9. "Red-tag" refers to the imposition of a stop work order on a building project.

exhaust their administrative remedies and that the court therefore lacked subject matter jurisdiction and accordingly dismissed the Mogas' complaint.

The Mogas appealed the decision to the court of appeals. They argued that the BOA was without statutory authority to review the Director's issuance of the stop work order. The court of appeals agreed and held that the BOA was only authorized to review decisions of administrative officers that were "based on or made in the course of the administration or enforcement of the zoning resolution." *See Moga*, slip op. at 4. Because the Mogas had received a variance, the court of appeals concluded that the Director of the Building Department who issued the stop work order was enforcing his interpretation of the variance and not his interpretation of the zoning resolution. *See id.* at 4–5. Therefore, the court of appeals reversed the trial court's ruling dismissing the action and remanded the case back to the trial court for further proceedings. *See id.* at 5.

We here conclude that the court of appeals construed the scope of the BOA's authority too narrowly.

## II.

The ultimate question underlying this litigation is whether the variance issued by the BOA to the Mogas included a height restriction. The Mogas argue that the question should appropriately be resolved by the district court, not the BOA. Their argument is grounded in the contention that the jurisdiction of the BOA extends only to the enforcement or administration of a zoning resolution, and not to issues relating to a variance. Because both the language of the applicable statutes and common sense dictate otherwise, we disagree.

## A.

As we observed in *Board of County Commissioners v. Conder*, 927 P.2d 1339 (Colo. 1996), the General Assembly has given local governments the authority to plan for and regulate the use of land within their respective jurisdictions. *See Conder*, 927 P.2d at 1344. In implementing that authority, local governments may make use of master plans, zoning and subdivision regulations.

Pursuant to that statutory authority, La Plata County adopted a land use plan with implementing regulations entitled the La Plata County Permit System [10] (Permit System). The Permit System includes zoning requirements, permit and application procedures and general development criteria.

Section 6.3.18 of the Permit System provides that on Class I property such as the Mogas', a structure must be at least 20 feet from the front lot line and at least 10 feet from the side and rear lot lines. Because of the size of their lot, the Mogas sought a variance from the setback requirements in order to enable them to build a structure closer to the lot lines. The variance procedure is controlled by section 7.9 of the Permit System which requires the BOA to hear requests for variances and take action based upon the public interest.[11]

After obtaining a variance, the landowner must next secure a building permit. A building permit from the county building inspector is required for the construction of any building or other structure within an unincorporated territory covered by a zoning regulation. *See* § 30–28–114, 9 C.R.S. (1997).[12] The building inspector may not issue a building permit unless the plans for the proposed building fully conform to all zoning regulations then in effect. *See id.*

In the case before us, the Mogas obtained a variance pursuant to the Permit System and then obtained a building permit. They

---

10. As of June 1997, La Plata County consolidated and readopted its Permit System into the La Plata County Land Use System (LPLUS). This controversy predates the LPLUS; therefore, we refer to the Permit System only.

11. The BOA is comprised of three to five members, not more than half of whom are members of the planning commission, appointed by the board of county commissioners (BOCC). Every county with a zoning resolution must have a BOA. *See* § 30–28–117(1), 9 C.R.S. (1997).

12. We cite to the current volumes of the statutes and note that the applicable statutes have not been amended during the pendency of this dispute.

commenced construction and then the Building Department issued a stop work order.[13] The Mogas argue that the stop work order raised issues concerning the building permit and the terms of the variance, which issues were not within the jurisdiction of the BOA.

## B.

A full analysis of the applicable statutes indicates otherwise. The BOA has those powers enumerated in section 30–28–118, 9 C.R.S. (1997). Pursuant to subsection (2) of that section, upon appeal the BOA is empowered: (a) to hear and decide appeals where an appellant alleges that there is an error in any order, requirement, decision, or refusal made by an administrative official or agency based on or made in the enforcement of the zoning resolution; (b) to hear and decide requests for special exceptions from the zoning resolutions; and (c) to authorize a variance from the strict application of any regulation if such strict application would result in exceptional practical difficulties or undue hardship upon the property owner and if such relief can be granted without substantial detriment to the public good and without impairing the intent and purpose of the zoning resolutions. *See* § 30–28–118(2)(a)–(c), 9 C.R.S. (1997).

The BOA also has the power to hear appeals taken by any person aggrieved by an inability to obtain a building permit or by the decision of any administrative officer or agency based upon or made in the course of the administration or enforcement of the provisions of the zoning resolution. *See* § 30–28–118(1)(a), 9 C.R.S. (1997). Section 31–23–307(1), 9 C.R.S. (1997), the enabling statute for the BOA, reaffirms the same principles. It provides, in pertinent part, that the BOA shall hear and decide appeals from and review any order, requirement, decision, or determination made by any administrative official charged with the enforcement of any ordinance adopted pursuant to the zoning plan. *See* § 31–23–307(1), 9 C.R.S. (1997).

An appeal to the BOA must be made by filing a notice of appeal with the BOA, specifying the grounds therefor. *See* § 31–23–307(2), 9 C.R.S. (1997). The BOA may reverse or affirm, in whole or in part, or may modify the order at issue. *See* § 31–23–307(4), 9 C.R.S. (1997). The BOA has broad discretion in fashioning an order and to that end has all the powers of the officer or department that issued the order that was appealed. *See id.* Every decision of the BOA is subject to certiorari review by the district court of the county within which the municipality or any part thereof is located. *See id.*

The Permit System contains zoning requirements. In the granting of the variance, the BOA was acting under the authority of the Permit System. The Building Inspector's issuance of a building permit, and then imposition of a stop work order because of concerns regarding compliance with the terms of the variance all relate back to the Permit System requirements. Hence, as a matter of clear statutory construction, the stop work order was an order of an administrative official based on or made in the enforcement of the zoning resolutions of La Plata County. As such, any challenge to a stop work order is within the BOA's statutory jurisdiction.

The Mogas argue that this controversy does not concern a zoning resolution because all parties agree that La Plata County has no zoned height restrictions. Rather, they contend that the dispute relates to whether the variance contains a particularized height restriction, which is not an issue of zoning. The argument belies common sense. The Mogas never would have sought a variance if they had not wished to avoid compliance with applicable zoning requirements. To obtain variance approval, the Mogas made certain representations to the BOA. The BOA adopted the representations as conditions of the variance. The variance was an order of the BOA made in the enforcement and administration of the zoning resolution. A building permit was sought and issued that may have deviated from the terms of the variance. *See supra* note 8.

---

**13.** The Mogas did not raise the issue of estoppel in their petition for certiorari review and that issue is therefore not properly before this court. Hence, we decline to consider that claim.

■ The BOA was the entity that issued the variance, and it is the entity best able to interpret the variance. *See Downey v. Department of Revenue,* 653 P.2d 72, 74 (Colo. App.1982) (concluding that the need for applying the exhaustion doctrine is heightened when the matter in controversy "raises the precise questions which are within the expertise of the administrative agency, and are of the very nature the agency was designed to resolve"). The applicable statutes all contemplate that the BOA will have the opportunity to review and clarify issues within its domain prior to judicial interference or intervention.

■ Thus, both the applicable statutes and the case law vest the BOA with initial jurisdiction in this matter and the Mogas were required to seek relief before the BOA prior to pursuing their complaint further. When a plaintiff fails to exhaust administrative remedies before seeking judicial review of an administrative decision, the court may lack jurisdiction to grant the requested relief. *See Horrell v. Department of Admin.,* 861 P.2d 1194, 1197 (Colo.1993); *Gramiger v. Crowley,* 660 P.2d 1279, 1281 (Colo.1983). The statutory procedure must be followed when the matter complained of is within the jurisdiction of the administrative authority. *See Denver–Laramie–Walden Truck Line, Inc. v. Denver–Fort Collins Freight Serv., Inc.,* 156 Colo. 366, 370, 399 P.2d 242, 243 (1965); *accord Brooke v. Restaurant Servs., Inc.,* 906 P.2d 66, 71 (Colo.1995); *Horrell,* 861 P.2d at 1197.

■ Plaintiffs must exhaust available and applicable administrative remedies in order to prevent piecemeal application for judicial relief, to avoid unwarranted interference by the judiciary in the administrative process, and to conserve judicial resources. *See Brooke,* 906 P.2d at 71; *Horrell,* 861 P.2d at 1197. The principal justification for the exhaustion doctrine is that, by affording administrative agencies an opportunity to correct their errors, the risk of unnecessary judicial intervention in the administrative process is minimized. *See Moschetti v. Liquor Licensing Auth.,* 176 Colo. 281, 490 P.2d 299 (1971).

## III.

We conclude that the applicable statutes required the Mogas first to submit their dispute about the interpretation of a variance issued by the BOA to the BOA itself rather than to the district court. Here, the stop work order raised issues concerning the building permit and the terms of the variance. These issues are within the jurisdiction and expertise of the BOA. Because the Mogas failed to exhaust their administrative remedies, the district court lacked jurisdiction over the controversy and properly dismissed the Mogas' complaint. For these reasons, we reverse the judgment of the court of appeals and direct reinstatement of the district court's order of dismissal.