**CITY OF BOULDER, a Colorado municipality, Brush Cogeneration Partners, a Colorado general partnership, Thermo Power & Electric, Inc., a Colorado corporation, Thermo Cogeneration Partnership L.P., a Delaware limited partnership, Thermo Greeley, L.L.C., a Colorado limited liability company, Plaintiffs–Appellants,**

v.

**PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation; and Colorado Public Utilities Commission, a Colorado state agency, Defendants–Appellees.**

No. 98CA0518.

Colorado Court of Appeals,
Div. II.

July 8, 1999.

Certiorari Denied April 10, 2000.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1998.

Cortez MaCaulay Bernhardt LLC, Miles Cortez, Susan Bernhardt, Richard Cohn, Denver, Colorado, for Plaintiffs–Appellants.

Elzi & Gurr, Kathryn A. Elzi, William M. Dudley, Denver, Colorado, for Defendant–Appellee Public Service Company.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Mana L. Jennings–Fader, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee Colorado Public Utilities Commission.

Opinion by Judge PLANK.

Plaintiffs, various entities selling electricity to defendant Public Service Company of Colorado (PSCo), a Colorado corporation, appeal the dismissal of their complaint asserting claims against PSCo and the Colorado Public Utilities Commission (PUC). We affirm.

## I. Background

### A. Legal Background

In 1978, Congress enacted the Public Utilities Regulation Policies Act (PURPA), codified at 16 U.S.C. § 824, et seq. (1999), to encourage the development and operation of facilities utilizing alternative electrical generation technologies not dependent upon fossil fuels as well as certain cogeneration technologies. 16 U.S.C. § 824a–3(a) (1999); *Phoenix Power Partners, L.P. v. Colorado Public Utilities Commission,* 952 P.2d 359 (Colo. 1998).

Pursuant to PURPA, regulated and unregulated electrical utility companies are, in general, required to purchase the output and capacity of facilities qualified under the act as such producers, known as qualified facilities (QFs). The price the utility companies must pay is set by the Federal Energy Regulatory Commission (FERC), but that price may not exceed "the incremental cost to the electric utility of alternative electric energy," which is defined in 16 U.S.C. § 824a–3(d) (1999) as:

> the cost to the electric utility of the electric energy which, but for the purchase from such [QF], such utility would generate or purchase from another source.

PURPA required FERC to adopt regulations to implement the act, and further directed the state regulatory commissions,

such as PUC, to enact rules implementing FERC's regulations after public hearing and comment. 16 U.S.C. §§ 824a–3(a) and 824a–3(f) (1999).

FERC promulgated regulations requiring, among other things, that utility companies pay to QFs their full "avoided cost" for the power purchased, subject to certain exceptions not relevant here. 18 C.F.R. § 292.304(b)(2). "Avoided cost" is defined in 18 C.F.R. § 292.101(b)(6) as:

> the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the [QF], such utility would generate itself or purchase from another source.

Nevertheless, FERC also permitted utilities and QFs to contract for a lower purchase price should they agree to do so. 18 C.F.R. § 292.301(b).

PUC adopted rules as required by PURPA to implement FERC's regulations, requiring electric utilities in Colorado to purchase electricity and capacity from QFs at their avoided cost according to a tariff submitted annually by the utility and approved by PUC. Alternatively, the QFs and electric utilities may contract for a price, to be based upon the utilities' avoided costs at the time of delivery or at the time the contract is formed. *See* Rules Implementing Sections 201 and 210, PURPA, Small Power Production and Cogeneration Facilities, Rule 3.500, et seq., 4 Code Colo. Reg. 723–19 (Colorado PURPA Rules). Such a contract, called a Power Purchase Agreement (PPA), must be reviewed and approved by PUC. Colorado PURPA Rules, Rule 5.300, 4 Code Colo. Reg. 723–19.

The U.S. Supreme Court has upheld FERC's regulation requiring utilities to purchase capacity and output of QFs at full avoided cost as well as FERC's regulation permitting utilities and QFs to contract for a lower price. *American Paper Institute, Inc. v. American Electric Power Service Corp.*, 461 U.S. 402, 103 S.Ct. 1921, 76 L.Ed.2d 22 (1983) (FERC regulation requiring payment of full avoided costs not arbitrary, capricious, or an abuse of discretion, noting, *inter alia*, that QFs and electric utilities may contract for a lower rate).

## B. Factual Background

Plaintiffs, each a QF pursuant to PURPA, the FERC regulations, and the Colorado PURPA Rules, individually entered into PPAs with PSCo at various times from 1985 through 1991. While the PPAs differ somewhat, generally each expressly sets a purchase price for the plaintiffs' capacity in accordance with PSCo's then-applicable tariff, incorporated as an attachment, with that rate fixed for the entire term, and sets the purchase price for electrical output based on the tariff applicable at the time of delivery. To qualify for the maximum price pursuant to the PSCo tariff, the term of each PPA is fifteen years.

One typical purchase price provision states in pertinent part that:

> Seller agrees to sell and Buyer agrees to buy the net Metered Energy Output and Capacity Output made available to Buyer by Seller from Seller's Facility, pursuant to this Agreement and relevant terms of the Company Tariff. Monthly payments shall consist of an On–Peak capacity component, Off–Peak capacity component and an energy component, each as defined in Attachment E [PSCo's tariff]. The rates of payment for Capacity Output, through the entirety of the term of this Agreement [15 years], shall be $10.34 per kilowatt month during the on-peak periods and $7.31 per kilowatt month during the off-peak periods [with percentage reductions for operation in different tariff categories]. The rate of payment for Seller's Metered Energy Output shall be in cents per [kilowatt-hour] fixed annually during the term of this Agreement in accordance with Attachment E . . . .

## C. Proceedings in the Trial Court

Plaintiffs do not allege that PSCo has failed to pay the amounts due under the express terms of the contract. Instead, plaintiffs allege in their complaint alternative grounds for a claim of breach of contract and breach of the implied covenant of good faith and fair dealing implicit in every contract, as well as claims for enforcement pursuant to 16

U.S.C. § 824a–3(g) (1999) and § 40–7–102, C.R.S.1998. As to defendant PUC, plaintiffs seek mandamus to compel it to enforce PURPA, the FERC regulations, and its own rules; adopt a proper methodology for determining avoided costs under those rules; and generally monitor PSCo's compliance.

The trial court granted defendants' motions for dismissal, concluding that plaintiffs sought, in essence, a modification of PSCo's PUC-approved tariffs, relief that the trial court held was beyond its subject matter jurisdiction because plaintiffs had not yet exhausted their administrative remedies. The trial court did not directly address plaintiffs' mandamus claim against PUC. This appeal followed.

## II. Breach of Contract

Plaintiffs contend that the trial court erred by dismissing for lack of subject matter jurisdiction their claim for breach of contract. We disagree.

■ When a complaint is dismissed for lack of subject matter jurisdiction, we apply a mixed standard of review. While the existence of subject matter jurisdiction is a question of law that we consider *de novo,* we will accept the trial court's findings of fact unless they are unsupported in the record and thus clearly erroneous. *Smith v. Town of Estes Park,* 944 P.2d 571 (Colo.App.1996); *Lyon v. Amoco Production Co.,* 923 P.2d 350 (Colo. App.1996).

■ When the court's subject matter jurisdiction is challenged, the plaintiff has the burden of proving that jurisdiction exists, and the trial court may consider evidence outside of the complaint when necessary to resolve the issue. *Smith v. Town of Snowmass Village,* 919 P.2d 868 (Colo.App.1996). Documents referred to in a pleading are, in effect, incorporated in that pleading, and may properly be considered by the trial court in deciding whether to dismiss a claim on any grounds. *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381 (10th Cir. 1997).

■ If the plaintiff fails to establish that the trial court has subject matter jurisdiction, the court must dismiss the matter; any other order or judgment entered by the court would be void and unenforceable. C.R.C.P. 12(b)(1); *Adams County Department of Social Services v. Huynh,* 883 P.2d 573 (Colo.App.1994).

■ We are not bound by the form in which the plaintiff asserts its claim, but rather it is the facts alleged and the relief requested that decide the substance of a claim, which in turn is determinative of the existence of subject matter jurisdiction. *State ex rel. Colorado Department of Health v. I.D.I., Inc.,* 642 P.2d 14 (Colo.App.1981).

Here, plaintiffs do not allege in their complaint that PSCo did not pay the amounts expressly set forth in the PPAs, but rather that PSCo miscalculated its avoided cost in the tariff annually filed with, and approved by, PUC. Because the tariff rates are the basis of the amounts set forth in the PPAs, plaintiffs argue that the PPAs are in essence agreements that PSCo would pay its full avoided cost, that the amounts recited in the PPAs are not express terms of the contract, and that the tariff rates understate PSCo's avoided cost. Consequently, they assert that PSCo has breached the PPAs by paying less than its full avoided cost. We are not persuaded that plaintiffs have asserted a cognizable breach of contract claim.

Under PURPA and the FERC regulations, PUC was charged with the authority and the duty to establish rules implementing the FERC regulations. PUC accordingly adopted the Colorado PURPA Rules, Rule 1.000, et seq., 4 Code Colo. Reg. 723–19, requiring among other things that PSCo annually submit in a tariff standard rates for purchase of the capacity and output of QFs. In 1982, PSCo filed the required tariff and PUC suspended it for investigation and hearing. After hearings conducted in 1983, PUC issued its decision C84–67 in 1984 modifying the tariff and, as pertinent here, setting forth a methodology for the calculation of avoided costs in future tariffs. PSCo's subsequent annual tariff filings each became effective by operation of law, *i.e.,* without a hearing, pursuant to § 40–6–111(2)(a), C.R.S.1998.

The PPAs are referred to in plaintiffs' complaint, and thus, they were properly con-

sidered by the trial court and are subject to our review. *GFF Corp. v. Associated Wholesale Grocers, Inc., supra.* Accordingly, we have reviewed the PPAs and perceive no ambiguity, for they are not reasonably susceptible of more than one interpretation, *see Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371 (Colo.1990), and we may determine their legal effect *de novo* as a matter of law. *See Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909 (Colo.1996).

■ We are not persuaded that the PPAs are agreements for PSCo to purchase plaintiffs' capacity and output at its full avoided cost. Rather, they are contracts to purchase capacity and output at stated rates in accordance with then-applicable tariffs filed by PSCo and approved by PUC. Plaintiffs and PSCo were free to bargain for any rates, not just PSCo's full avoided cost, pursuant to 18 C.F.R. § 292.301(b). *See American Paper Institute, Inc. v. American Electric Power Service Corp., supra.*

■ Plaintiffs' claim for breach of contract is grounded in the notion that the rates were improperly calculated by PSCo in its tariff filings and, consequently, that the rates set forth in the PPAs are not what plaintiffs bargained for. The setting of rates is, however, inherently a legislative function that may properly be delegated to an administrative agency; it is not a judicial or quasi-judicial function and thus may not properly be performed by the courts. *Bennett Bear Creek Farm Water & Sanitation District v. City & County of Denver,* 928 P.2d 1254 (Colo.1996).

■ The PPAs expressly incorporate PSCo's tariff rates. Accordingly, we agree with the trial court that plaintiffs' claim requested, in essence, not the enforcement of the terms of the PPAs between the parties, but rather the modification of rates set forth in PUC-approved tariffs. Where administrative remedies are available and have not been exhausted, the courts lack subject matter jurisdiction and the case must be dismissed. *Kriz v. Colorado Department of Revenue,* 916 P.2d 659 (Colo.App.1996).

Thus, we agree with the trial court's determination that it lacked subject matter juris-

diction until, and unless, review of the tariff rates by PUC is first sought in accordance with the statutory procedures set forth in §§ 40–6–108 and 40–6–109, C.R.S.1998. *See State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo.1998) (trial court lacks subject matter jurisdiction over administrative matters until administrative remedies are exhausted); *Colorado Office of Consumer Counsel v. Public Utilities Commission,* 752 P.2d 1049 (Colo. 1988) (parties must exhaust administrative remedies before seeking judicial review of actions of PUC). Once all available PUC administrative remedies have been exhausted, judicial review of its decision is available in the district court pursuant to § 40–6–115, C.R.S.1998.

Hence, the trial court did not err in dismissing plaintiffs' breach of contract claim against PSCo.

### III. Breach of the Implied Covenant of Good Faith and Fair Dealing

■ Plaintiffs next contend that the trial court erred by dismissing their claim for breach of the covenant of good faith and fair dealing implicit in every contract. Again, we disagree.

■ Every contract contains an implied covenant of good faith and fair dealing. *Amoco Oil Co. v. Ervin,* 908 P.2d 493 (Colo. 1995).

■ The implied covenant of good faith and fair dealing does not inject new substantive terms or conditions into a contract, *Soderlun v. Public Service Co.,* 944 P.2d 616 (Colo.App.1997), but rather it is invoked only to give effect to the intentions of the parties or to honor their reasonable expectations in entering into the contract. *Bayou Land Co. v. Talley,* 924 P.2d 136 (Colo.1996). Accordingly, the doctrine is applied only when "one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Amoco Oil Co. v. Ervin, supra,* 908 P.2d at 498.

Here, plaintiffs allege in their complaint that PSCo breached its implicit duty of good faith under the PPAs by improperly calculat-

ing energy and capacity payments due to plaintiffs under those agreements, by failing properly to account for its avoided costs, and by failing to provide plaintiffs with access to its records relevant to determining its avoided costs. However, plaintiffs do not allege that PSCo has discretion to determine any relevant term of the contracts, nor does our review of the PPAs reveal any such discretion. Indeed, the energy and capacity payments due to plaintiffs under the PPAs are not subject to PSCo's discretionary calculation; instead, the agreements merely incorporate amounts set forth in PUC-approved tariffs. The energy purchase rate PSCo determines annually for its tariff filing is not a term of the PPAs subject to PSCo's discretion because it must be calculated in accordance with PUC's methodology and other regulations.

Accordingly, we conclude that the trial court did not err in dismissing this claim for lack of subject matter jurisdiction. Any relief the trial court might grant to plaintiffs pursuant to this claim would be in derogation of PUC's authority to establish the tariff rates for full avoided costs.

## IV. PURPA Enforcement

 Plaintiffs next contend that the trial court erred by dismissing their PURPA enforcement claim for lack of subject matter jurisdiction. We disagree.

PURPA, as codified at 16 U.S.C. § 824a–3(g) (1999) and pertinent here, provides for private enforcement of its provisions:

Judicial review and enforcement. . . .

(2) Any person . . . may bring an action against any electric utility . . . to enforce any requirement established by a State regulatory authority or nonregulated electric utility pursuant to subsection (f) of this section [requiring state regulatory authorities to enact rules implementing the FERC regulations]. Any such action shall be brought only in the manner, and under the requirements, as provided under section 2633 of this title with respect to an action to which section 2633 of this title applies.

16 U.S.C. § 2633(c)(1) (1999) provides in pertinent part:

Any person . . . may bring an action to enforce the requirements of this chapter in the appropriate State court, except that no such action may be brought in a State court with respect to a utility which is a Federal agency. *Such . . . action in a State court shall be pursuant to any applicable State procedures.* (emphasis added)

Plaintiffs allege in their complaint that PSCo has violated the Colorado PURPA Rules and the FERC regulations, and thus has violated PURPA, by refusing to pay its full avoided costs for plaintiffs' capacity and output, by miscalculating those costs in tariff filings with PUC, and by subsequently incorporating those improper rates into the PPAs.

Plaintiffs argue that PURPA preempts all state law regarding the purchase of electrical energy and generating capacity by utilities from QFs except to the limited extent that it expressly delegates authority to the state regulatory authorities and state courts. More precisely, they assert that the emphasized sentence quoted above in § 2633(c)(1) encompasses and authorizes the application only of state procedural requirements, in particular that the state's rules of civil procedure should be applied in the state's courts, and accordingly, that the state regulatory authorities have no jurisdiction and the state courts have exclusive jurisdiction over PURPA enforcement claims pursuant to 16 U.S.C. § 824a–3(g) (1999). We are not persuaded that such a narrow construction is proper.

We need not decide the extent to which PURPA preempts state law because the specific authorization in 16 U.S.C. § 2633(c)(1), directing that an action brought in a state court "shall be pursuant to any applicable state procedures," is broad enough to resolve the issue before us.

"The starting point in interpreting a [federal] statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hospital v. Shalala,* 508 U.S. 402, 409, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368, 378 (1993).

Here, the intent of Congress is clear: actions to enforce PURPA in the state courts are subject to "applicable state procedures." In Colorado, the applicable procedures for challenging a full avoided cost rate set forth in a PUC-approved tariff begin with a complaint to PUC pursuant to § 40–6–108, C.R.S.1998. If the complaint is denied or the complaining party remains unsatisfied with PUC's determination, it must seek reconsideration, reargument, or rehearing pursuant to § 40–6–114, C.R.S.1998, or judicial review is barred. *Colorado Office of Consumer Counsel v. Public Utilities Commission,* 752 P.2d 1049 (Colo.1988). Accordingly, pursuant to § 40–6–115, C.R.S.1998, the district courts lack subject matter jurisdiction to review such matters unless those administrative remedies have first been exhausted. *See Colorado Office of Consumer Counsel v. Public Utilities Commission, supra; State v. Golden's Concrete Co., supra.*

Thus, we perceive no error in the trial court's dismissal of plaintiffs' PURPA enforcement claim for lack of subject matter jurisdiction.

## V. Colorado Statutory Damages Claim

■ Plaintiffs contend that the trial court erred by dismissing their claim for damages against PSCo pursuant to § 40–7–102, C.R.S. 1998, for lack of subject matter jurisdiction. We disagree.

Section 40–7–102, C.R.S.1998, states in pertinent part:

In case any public utility does, causes to be done, or permits to be done any act, matter, or thing prohibited, forbidden, or declared to be unlawful, or omits to do any act, matter, or thing required to be done, either by the state constitution, any law of this state, or any order or decision of the commission, such public utility shall be liable to the persons or corporations affected thereby for all loss, damage, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, the court, in addition to the actual damages, may award exemplary damages. *An action to recover such loss, damage, or injury may be brought in any court of*

*competent jurisdiction by any corporation or person.* (emphasis added)

In their claim for relief under this statute, plaintiffs allege that:

As a result of PSCo's misconduct, [p]laintiffs have incurred damages, and will continue to suffer damages through trial. . . .

Plaintiffs argue that the final sentence of § 40–7–102(1), emphasized above, vests exclusive subject matter jurisdiction in the courts to hear and determine this claim, and that the trial court erred by dismissing the claim for lack of jurisdiction.

■ Section 40–7–102(1) creates a private cause of action to compensate with money damages the injury of any person caused by conduct of a regulated utility that violates state law or any PUC order or decision. *Fawn Lake Ranch Co. v. K.C. Electric Ass'n,* 700 P.2d 564 (Colo.App.1985).

■ The plain language of the statute grants permissive jurisdiction to the courts within the state to decide such claims, but the phrase "may be brought in any court of competent jurisdiction" cannot fairly be construed as granting exclusive jurisdiction to those courts or as creating subject matter jurisdiction in the absence of an exhaustion of administrative remedies. Section 40–7–102(1), C.R.S.1998.

Plaintiffs argue here that PSCo has violated state law by miscalculating its full avoided costs in violation of a PUC decision, by filing erroneous tariffs with PUC, and by failing to pay its full avoided costs as mandated by the FERC regulations, the Colorado PURPA Rules, and the PPAs. We are not persuaded.

We have already determined above that the PPAs are not contracts requiring PSCo to pay its full avoided costs, but rather they require PSCo to pay specified amounts in accordance with PUC-approved tariffs, and plaintiffs concede that PSCo has paid those amounts. Thus, there is no unlawful conduct under state law arising from PSCo's performance under the PPAs.

As to the remaining claims, there is no injury to plaintiffs resulting from PSCo's alleged miscalculation of full avoided cost nor from the filing of its allegedly erroneous

tariffs with PUC until, and unless, it is properly determined in a proceeding before the PUC that there was, in fact, a miscalculation pursuant to PUC's decision or that the tariffs filed were incorrect. Because a determination of these matters implicates the rate-setting authority of PUC pursuant to PURPA, the FERC regulations, and the Colorado PURPA Rules, the trial court properly dismissed this claim for lack of subject matter jurisdiction.

## VI. Futility

■ Plaintiffs nevertheless argue that the trial court does not lack subject matter jurisdiction because presentation of their claims to PUC would be futile. We disagree.

■ A party need not exhaust available administrative remedies when it is clear beyond a reasonable doubt that pursuing those remedies would be futile. *State v. Golden's Concrete Co., supra.*

Plaintiffs allege in their complaint that PUC has failed to take any action since 1984 to enforce PURPA, the FERC regulations, and its own rules to their detriment; that PUC has refused to consider similar claims on two occasions in 1994 and 1995; and that PUC has engaged in a course of conduct since 1993 favoring PSCo and discriminating against QFs in an effort to reduce the payments PSCo must make to QFs.

Taking plaintiffs' allegations in the light most favorable to them, we are not persuaded that they have established clearly and beyond a reasonable doubt that presenting to PUC their claims that PSCo miscalculated its avoided costs in its tariffs and in the PPAs would be futile. In each instance that plaintiffs complain of, PUC ultimately took no action unfavorable to plaintiffs and in some instances took action favorable to them. Plaintiffs did not seek judicial review of PUC's alleged refusal to consider earlier purportedly similar claims, and the record before us is inadequate to establish beyond a reasonable doubt that seeking PUC consideration of plaintiffs' contentions would be futile.

## VII. Mandamus

■ Finally, plaintiffs contend that the trial court erred by dismissing their claim seeking a writ of mandamus to compel PUC to fulfill its obligations pursuant to PURPA, the FERC regulations, and the Colorado PURPA Rules. We disagree.

■ Mandamus is an extraordinary writ, to be granted against a public official or entity only upon a showing that the plaintiff has a clear right to relief, the public official or entity has a clear duty to perform the act requested, and that there is no other available remedy. *State ex rel. Norton v. Board of County Commissioners,* 897 P.2d 788 (Colo.1995).

■ Prior to seeking mandamus, the party must have sought the relief requested directly from the public official or entity. *Raymond v. State Civil Service Commission,* 104 Colo. 458, 92 P.2d 331 (1939).

■ Mandamus will issue only to compel a public official or entity to carry out an administrative or ministerial duty, but is not available to compel the exercise of its discretion in a particular way. *Keystone v. Flynn,* 769 P.2d 484 (Colo.1989).

In their complaint, plaintiffs allege:

157. [PUC] has no discretion with respect to its legal duties and obligations under PURPA to ensure that [p]laintiffs receive payment for PSCo's full avoided costs pursuant to the [PPAs].

158. [PUC] has failed to perform acts necessary to carry out the intent and mandate of PURPA, with the result that PSCo has been permitted to pay [p]laintiffs less than PSCo's full avoided costs pursuant to the [PPAs].

159. [The trial court] has jurisdiction . . . to compel [PUC] to perform the following acts to ensure compliance with PURPA:

a. Enforce the methodology it established for PSCo to calculate capacity and energy payments for QFs such that [p]laintiffs receive PSCo's full avoided costs . . .

b. Monitor PSCo's compliance with PURPA . . .

c. Perform regular, comprehensive audits of all information filed by PSCo in accordance with PSCo's PURPA obligations . . .

d. Direct its staff to adopt and execute practices and procedures which comport

with and effectuate the mandate of PURPA.

However, as previously noted and contrary to plaintiffs' allegations, our review of PURPA, the FERC regulations, and the Colorado PURPA Rules reveals that in fact PUC has substantial discretion in determining how the mandate of PURPA is to be implemented, including the adoption of any reasonable methodology for calculating PSCo's full avoided costs. PUC also plainly has authority and discretion to determine the extent and nature of its PURPA enforcement efforts. Plaintiffs also admit that they have not demanded relief from PUC for most of the allegations raised in their complaint.

Accordingly, we agree with the trial court's implicit determination that it lacked subject matter jurisdiction to compel PUC to carry out its discretionary duties pursuant to PURPA, the FERC regulations, and the Colorado PURPA Rules in a particular manner that would better suit plaintiffs.

The judgment dismissing plaintiffs' complaint is affirmed.

Judge JONES and Judge VOGT concur.