CITY OF ASPEN, individually and on behalf of the class of others similarly situated, Plaintiff–Appellant,

v.

KINDER MORGAN, INC.; Rocky Mountain Natural Gas Division of KN; and Rocky Mountain Natural Gas Company, Defendants–Appellees.

No. 04CA2137.

Colorado Court of Appeals, Div. V.

March 9, 2006.

As Modified on Denial of Rehearing May 4, 2005.

Certiorari Denied Oct. 2, 2006. *

---

* Chief Justice MULLARKEY would grant as to the following issue:

Whether the court of appeals erred by contradicting the CCPA principles explained in *Showpiece* *Homes Corp. v. Assurance Co.*, 38 P.3d 47 (Colo. 2001) and *Crowe v. Tull*, 126 P.3d 196 (Colo. 2006).

Colorado Consumers Legal Foundation, Roger A. Jatko, Ilona L. Dotterrer, Greenwood Village, Colorado; John P. Worchester, City Attorney, Aspen, Colorado, for Plaintiff–Appellant.

Jones & Keller, P.C., Alvin J. Meiklejohn, Jr., Denver, Colorado; The Beatty Law Firm, P.C., Michael L. Beatty, Jack R. Luellen, Denver, Colorado, for Defendants–Appellees.

WEBB, J.

In this dispute over the heating content of natural gas, plaintiff, the City of Aspen (Aspen), a natural gas customer of defendants, Kinder Morgan, Inc., Rocky Mountain Natural Gas, and Rocky Mountain Natural Gas Company, appeals the dismissal of its complaint for lack of subject matter jurisdiction. We affirm.

## I. Proceedings in the Trial Court

Defendants are regulated public utilities that collectively provide transportation and retail natural gas services to Aspen and across Colorado's Western Slope. Aspen filed a class action on behalf of itself and

defendants' Western Slope retail, commercial, and industrial gas customers, alleging deceptive trade practices in violation of the Colorado Consumer Protection Act (CCPA), § 6–1–105, et seq., C.R.S.2005, negligent misrepresentation, and intentional misrepresentation.

The complaint asserts that defendants falsely represented the characteristics of the natural gas they have transported and sold to Aspen and members of the putative class. All claims arise from defendants' alleged practice of delivering and billing for natural gas based on its sea level heating content, although the gas has a lower heating content when sold at higher altitudes on the Western Slope.

Defendants moved to dismiss under C.R.C.P. 12(b)(1) and 12(b)(5), arguing lack of subject matter jurisdiction because Aspen's claims concern rates and services set forth in tariffs approved by the Colorado Public Utilities Commission (PUC). According to defendants, these rates and services are within the sole jurisdiction of the PUC. The trial court agreed and dismissed the complaint.

## II. Standard of Review

■■■ Under C.R.C.P. 12(b)(1), a trial court determines subject matter jurisdiction by examining the substance of the claim based on the facts alleged and the relief requested. *State ex rel. Colo. Dep't of Health v. I.D.I., Inc.,* 642 P.2d 14 (Colo.App. 1981). The plaintiff has the burden of proving jurisdiction, and evidence outside the pleadings may be considered to resolve a jurisdictional challenge. *Smith v. Town of Snowmass Village,* 919 P.2d 868 (Colo.App. 1996).

■■■ An appellate court employs a mixed standard of review to dismissals for lack of subject matter jurisdiction. *Egle v. City & County of Denver,* 93 P.3d 609 (Colo.App. 2004). The trial court's factual findings are reviewed under the clear error standard, and thus are "binding unless so clearly erroneous as not to find support in the record." *Lyon v. Amoco Prod. Co.,* 923 P.2d 350, 353 (Colo. App.1996); *see also Arapahoe County Bd. of*

*Equalization v. Podoll,* 935 P.2d 14 (Colo. 1997). The trial court's legal conclusions are reviewed de novo. *Walton v. State,* 968 P.2d 636 (Colo.1998).

## III. Trial Court's Factual Findings

Based on our review of the record, we conclude that the trial court's factual findings, as summarized below, were not clearly erroneous, and hence we adopt them here.

Collectively, defendants are involved in both selling and transporting natural gas. The PUC ratemaking process deals with the transportation rate and natural gas rate separately.

The transportation rate is established by determining the cost of providing transportation services plus a reasonable profit, and then dividing this total among all the customers in the rate area.

The PUC also establishes charges for the gas sold, but does not allow any profit on sales because the utility makes a profit on its transportation services. Each year, defendants must file the projected total cost for all the estimated gas purchases by customers. If the PUC finds these purchases are prudent, then the total costs are divided by the total projected gas sales in the market area and a rate per unit (hundred cubic feet or Ccf) of gas is established. This projected rate is then adjusted using a conversion factor, called a Local Billing Pressure (LBP), and the rate per Ccf is reduced to reflect the lower heating content of the gas sold at higher elevations.

The PUC has determined that an average LBP adjustment should be used for all Western Slope customers because the gas is purchased for that rate area and a single price per unit is the proper way to spread the cost. Although the LBP conversion factor is below the elevation pressure of some towns on the Western Slope and above others, it reflects that the PUC has chosen to treat the Western Slope as a single rate area.

These specialized proceedings result in a rate that includes the nongas component, namely the cost needed to transport the gas to customers, and the gas component, namely the cost of the gas supply purchased and sold

to customers. Each year the PUC determines whether a utility has recovered too much or too little on its sales and orders a rebate or surcharge as appropriate.

When the ratemaking process has been completed, defendants are required to file tariffs setting forth their approved rates and terms of service. Defendants have done so.

The PUC also establishes what information must be disclosed on a customer's bill, and these items are described in the tariffs. Among other things, it requires defendants to show the meter reading at the beginning and end of the billing period, thermal billing data if applicable, the date of the last reading, the volume of gas supplied, taxes, and additional charges due. The bills to transportation service customers must show the total nongas costs on a per unit basis and the utility's gas costs in total and on a per unit basis if practicable.

### IV. PUC Exclusive Jurisdiction

■ We also agree with the trial court's determination that the PUC has exclusive jurisdiction of Aspen's claims.

### A. PUC Authority over Ratemaking

Ratemaking is a legislative function delegated to the PUC both in the Colorado Constitution and by statute. Colo. Const. art. XXV ("[A]ll power to regulate the facilities, service and rates and charges ... is hereby vested in [the PUC]."); § 40–3–102, C.R.S. 2005; *see also Pub. Serv. Co. v. PUC*, 26 P.3d 1198 (Colo.2001).

Section 40–3–102 sets forth the PUC's specific jurisdiction:

The power and authority is hereby vested in the public utilities commission of the state of Colorado and it is hereby made its duty to adopt *all necessary rates, charges, and regulations to govern and regulate all rates, charges, and tariffs of every public utility* of this state to correct abuses; to prevent unjust discriminations and extortions in the rates, charges, and tariffs of such public utilities of this state; to generally supervise and regulate every public utility in this state; and to do all things, whether specifically designated in articles

1 to 7 of this title or in addition thereto, which are necessary or convenient in the exercise of such power, and to enforce the same by the penalties provided in said articles through proper courts having jurisdiction ....

(Emphasis added.)

■ This statute shows the legislature's clear intent "to place the primary duty and responsibility for the determination of just and reasonable utility rates in the Commission, and [provide] a rather complete procedural structure for the Commission to follow in discharging its function." *CF&I Steel, L.P. v. PUC*, 949 P.2d 577, 584 (Colo.1997).

Ratemaking for gas utilities is a specialized and technical procedure. The courts do not have the expertise or authority to delve into the application of the PUC's ratemaking rules. *See PUC v. Dist. Court*, 186 Colo. 278, 282, 527 P.2d 233, 234 (1974) (because ratemaking is a delegated legislative function, "the judiciary must refrain from any semblance of ratemaking"); *see also City of Boulder v. Pub. Serv. Co.*, 996 P.2d 198, 203 (Colo.App.1999) (ratemaking is not a judicial function and should not be performed by the courts).

### B. Aspen's Claims Involve Ratemaking

Aspen contends its claims are beyond the PUC's exclusive jurisdiction because they concern misrepresentations about the heating content of gas, not ratemaking. We disagree.

■ "We are not bound by the form in which the plaintiff asserts its claim, but rather it is the facts alleged and the relief requested that decide the substance of a claim, which in turn is determinative of the existence of subject matter jurisdiction." *City of Boulder v. Pub. Serv. Co., supra*, 996 P.2d at 203.

The allegations in Aspen's complaint belie its assertions on appeal that its claims are limited to defendants' misrepresentation of the heating content of the gas sold. Aspen cannot avoid implicating the ratemaking jurisdiction of the PUC by recharacterizing its claims on appeal. *See City of Boulder v. Pub. Serv. Co., supra.*

According to the complaint, defendants' conduct harmed Aspen by (1) creating " 'hidden profits' for Defendants at the expense of Plaintiffs and other members of the class"; (2) causing it "to pay more for the heating content value of the natural gas than Defendants' customers who would have been located at lower altitudes"; (3) causing it to "suffer substantial damages in the form of overcharges for retail natural gas sold and delivered since 1980"; and (4) inducing it "to pay the unlawful charges on Defendants' billing statements."

The complaint further alleges that damages resulted from defendants' failure "to apply the required conversion factor when billing for the natural gas they have sold and continue to sell to Class members, although such a correction factor is required to avoid falsely over-charging these customers for low-BTU content natural gas."

Whether characterized as paying too much for the gas received (as alleged in the complaint) or not receiving the heating content that was represented (as argued on appeal), the essence of the complaint is that defendants overcharged Aspen given the heating content of the gas it sold. But even if so, defendants used rates and conversion factors that the trial court found, with record support, had been approved by the PUC. Thus, we conclude ratemaking is inextricably intertwined with these claims.

Accordingly, we agree with the trial court that Aspen's claims are within the PUC's jurisdiction.

## V. Statutory Construction

Aspen next contends that its CCPA claims are viable, even if they involve ratemaking generally subject to PUC jurisdiction. We disagree.

### A. PUC Statutes and CCPA

Colorado courts have taken an expansive approach to interpreting the CCPA. *See Crowe v. Tull,* 126 P.3d 196 (Colo.2006); *see also Showpiece Homes Corp. v. Assurance Co.,* 38 P.3d 47 (Colo.2001). The supreme court considers the "CCPA in its entirety and interpret[s] the meaning of any one sec-tion by considering the overall legislative purpose." *Crowe v. Tull, supra,* 126 P.3d at 202 (quoting *May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 973 n. 10 (Colo. 1993)).

The CCPA generally protects all consumers from deceptive and unfair trade practices of any kind. *See Crowe v. Tull, supra.* In contrast, the PUC statutes provide a specific procedure for regulating rates and ratemaking factors of public utility companies. *See CF&I Steel, L.P. v. PUC, supra,* 949 P.2d at 584.

Although Aspen's claims allege unfair trade practices described in the CCPA, we have held that the claims involve the specific and exclusive ratemaking jurisdiction of the PUC. "When two statutes attempt to regulate the same conduct, the more specific statute preempts the general statute." *Crowe v. Tull, supra,* 126 P.3d at 206. Thus, we conclude that because the PUC statutes specifically address the issues raised in Aspen's claims, and the CCPA only generally addresses deceptive trade practices, the PUC statutes govern.

Relying on *Crowe v. Tull, supra,* and *Showpiece Homes Corp. v. Assurance Co., supra,* Aspen asserts that the CCPA gives the trial court jurisdiction over its claims. These cases are distinguishable.

In *Showpiece Homes, supra,* the plaintiff asserted that its insurer did not authorize enough money to settle with a third-party claimant and hence the insurer violated the CCPA by failing to properly investigate and settle the third party's claims. The insurer responded that because it was regulated by the insurance commissioner and subject to the Unfair Competition–Deceptive Practices Act (UCDPA), § 10–3–1101, et seq., C.R.S. 2005, it was exempt from the CCPA.

The supreme court disagreed. It ruled that "the mere existence of a regulatory body to oversee certain standards of an industry does not remove all acts and practices of that industry from the provisions of the CCPA." *Showpiece Homes, supra,* 38 P.3d at 56–57. The court also noted the lack of remedial provisions in the UCDPA, which it described as only a regulatory statute.

In *Crowe v. Tull, supra,* a client sued his attorney for using false or deceptive advertising in violation of the CCPA. The supreme court acknowledged the attorney's argument that it has exclusive jurisdiction to regulate the practice of law. However, the court concluded that an attorney could still be liable for violating the CCPA because enforcement of the CCPA against attorneys would not interfere with its regulatory powers over them. The court explained that because the conduct proscribed by the CCPA did not conflict with the Rules of Professional Conduct, and because the remedies of the CCPA differed from the remedies used to regulate attorneys, the claims were cognizable under the CCPA.

The PUC exercises broader power than the roles of the supreme court and the insurance commissioner discussed in these two cases. In rectifying unlawful action of a utility, the PUC can invoke the following remedies: (1) ordering a public utility to pay reparations to customers, § 40–6–119(1), C.R.S.2005; (2) requesting the Attorney General to bring suit for civil penalties, § 40–7–109, C.R.S.2005; (3) referring the "case to the Attorney General for commencement of a lawsuit for relief against current or pending law violations through injunction or mandamus," § 40–7–104(1), C.R.S.2005; and (4) referring the case for criminal prosecution against any utility personnel who violate the law, § 40–7–106, C.R.S.2005. *Archibold v. PUC,* 58 P.3d 1031, 1036–37 (Colo.2002). Thus, unlike the UCDPA, the PUC exercises remedial as well as regulatory power.

Further, unlike the supreme court's authority to regulate attorneys and the insurance commissioner's authority to regulate insurance companies, the regulatory powers and purposes of the PUC include remedies similar to those available under the CCPA.

Aspen recognizes that its claims implicate the authority of the PUC by stating that the "district court need only analyze whether [defendants] compl[y] with PUC requirements and, if not, whether [defendants'] failure to comply with PUC requirements is a deceptive trade practice under the CCPA." Determining whether defendants comply with the PUC requirements and fashioning a remedy for any violation is within the PUC's authority.

Nevertheless, Aspen argues that regulated utilities are not exempt from the CCPA. We do not decide this issue because here the exclusive jurisdiction of the PUC is based on the character of the claims asserted, and not on the fact that defendants are regulated by statute, as was the key assertion in *Showpiece Homes, supra.* Thus, we need not determine whether or to what extent other claims against public utilities could be brought under the CCPA.

Accordingly, we conclude that Aspen cannot bring its claims under the CCPA.

## B. Exhaustion of Administrative Remedies

 Aspen argues that the PUC private remedy statutes, §§ 40–7–102(1) and 40–7–103(1), C.R.S.2005, support a CCPA suit. We disagree.

Section 40–7–102(1) authorizes an action to be brought against a utility "in any court of competent jurisdiction" for actions that violate the constitution or laws of this state or any order or decision of the PUC. Section 40–7–103(1) provides:

> The provisions of articles 1 to 7 of this title shall not have the effect of releasing or waiving any right of action by the state, the commission, or any person or corporation for any right, penalty, or forfeiture which may have arisen or accrued under any law of this state.

Aspen asserts that because these statutes broadly recognize actions that may be brought for injuries incurred from a utility's violation of Colorado law, they support its CCPA claims. Even if Aspen were correct, it has failed to exhaust remedies before the PUC and therefore cannot at this time invoke them to support its CCPA claims.

In *City of Boulder, supra,* the plaintiffs sought damages under § 40–7–102(1), asserting that the utility had violated state law by filing erroneous tariffs and operating in violation of an earlier PUC decision. The district court dismissed the case for lack of subject matter jurisdiction.

On appeal, the *City of Boulder* plaintiffs argued that the statute creates exclusive subject matter jurisdiction in the district court to hear their claims. The division disagreed. It held that although the statute creates a private cause of action for damages resulting from conduct of a regulated utility which violates state law, subject matter jurisdiction does not exist in the district court unless and until administrative remedies have been exhausted as provided in §§ 40–6–108 and 40–6–109, C.R.S.2005.

We discern no reason to depart from this holding. Thus, although these statutes do not limit the types of actions that may be brought, they are subject to an exhaustion requirement.

Aspen argues that exhaustion is not required, notwithstanding *City of Boulder, supra*, because remedies are available under the CCPA without proof of actual injury. *See* §§ 6–1–105(1), 6–1–109, C.R.S.2005. However, Aspen also alleges that the deceptive practices violate PUC regulations. Thus, we reject this argument because even if CCPA relief might be available for some such violations absent actual injury, the PUC would still be the proper forum for first determining whether defendants violated its regulations.

## C. Futility

■ Aspen argues that exhaustion of administrative remedies is futile and deprives it of both a forum and a remedy. We disagree.

As previously indicated, the PUC has several remedies available for unlawful action of a utility, and such remedies are not mutually exclusive. *Archibold, supra.* Further, the courts "accord great deference to the PUC's remedy choice because the commission has special expertise in public utility regulation and its choice of remedy resides at the core of its responsibility and discretion." *Archibold, supra*, 58 P.3d at 1037.

The Colorado Supreme Court upheld a reparations award to utility customers in *Peoples Natural Gas Division v. Public Utilities Commission*, 698 P.2d 255, 263 (Colo. 1985), and articulated the policy behind such an award: "Otherwise there would be no effective remedy for pervasive overcharging of a utility's ratepayers, many of whom might have difficulty in detecting and proving the overcharge, and might have only a small amount to recover."

Aspen asserts both that exhaustion of administrative remedies would be futile because the PUC does not have jurisdiction to hear CCPA claims, and that exhaustion should not be required because the PUC lacks procedures for a class action, which Aspen argues is necessary to provide full and complete relief. We reject both assertions.

Whether the PUC has jurisdiction over claims under the CCPA is irrelevant because by ordering reparations the PUC has the power to grant a meaningful remedy for conduct that would violate the CCPA, if it concludes defendants also thereby engaged in illegal conduct. And this remedy can compensate each aggrieved customer, despite the absence of class action procedures.

Accordingly, we conclude that the district court lacks subject matter jurisdiction until Aspen exhausts the administrative remedies available.

## VI. Severance

■ Finally, Aspen acknowledges that some of its allegations may involve information contained in billing statements and, thus, the exclusive jurisdiction of the PUC. Yet, Aspen states that "this Court can sever any of Aspen's allegations concerning information in billing statements, the resolution of which may be within the exclusive jurisdiction of the PUC, and allow the core of [Aspen's] CCPA allegations to proceed." We disagree.

The form of the billing is addressed by the PUC in the tariffs, making it a rate matter over which the PUC exercises its exclusive jurisdiction. *See City of Montrose v. PUC*, 629 P.2d 619, 624 (Colo.1981) (PUC "has authority to regulate the information which public utilities include in their customer billings"). We discern no basis for severing these allegations, in light of our conclusion that the billing and rate issues are inextricably intertwined with all the claims in the case and, thus, remain in the exclusive jurisdiction of the PUC.

## VII. Attorney Fees on Appeal

■ The trial court found no violation of C.R.C.P. 11; held that the complaint was not

groundless, frivolous, or vexatious under § 13–17–101, et seq., C.R.S.2005; and declined to award defendants their attorney fees in its order granting their motion to dismiss pursuant to C.R.C.P. 12(b)(1). Thereafter, defendants moved for attorney fees pursuant to § 13-17-201, C.R.S. 2005. The trial court granted defendant's motion for attorney fees finding that an award of attorney fees is mandatory pursuant to § 13-17-201 where the action is dismissed pursuant to C.R.C.P. 12(b)(1).

Accordingly, we conclude defendants are entitled to their attorney fees on appeal. See *Wark v. Board of County Commissioners,* 47 P.3d 711 (Colo.App.2002)("A party who successfully defends [a dismissal order pursuant to C.R.C.P. 12(b)] is also entitled to recover reasonable attorney fees incurred on appeal.").

The judgment is affirmed. Defendants should be awarded their reasonable attorney fees incurred in defending this appeal in an amount to be determined by the trial court on remand pursuant to C.A.R. 39.5.

Judge RUSSEL and Judge HAWTHORNE concur.