16CA0940 Development Recovery v Public Svs 06-15-2017          **2017COA86**

COLORADO COURT OF APPEALS

---

Court of Appeals No. 16CA0940
City and County of Denver District Court No. 15CV34584
Honorable Catherine A. Lemon, Judge

---

Development Recovery Company, LLC,

Plaintiff-Appellant,

v.

Public Service Company of Colorado, d/b/a Xcel Energy Company,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE ROMÁN
Taubman and Lichtenstein, JJ., concur

Announced June 15, 2017

---

MMARTINLAW LLC, E. Gregory Martin, Michael G. Martin, Denver, Colorado, for Plaintiff-Appellant

Gordon & Rees LLP, John M. Palmeri, Franz Hardy, Lance J. Ream, Gregory S. Hearing II, Denver, Colorado, for Defendant-Appellee

Cynthia H. Coffman, Attorney General, Jessica L. Lowrey, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Colorado Public Utilities Commission

¶ 1    In this case, we are asked to decide whether the district court has jurisdiction over a breach of contract case against a public utility where the essence of the claims involves the enforcement of tariffs. We conclude that where common-law claims are, in essence, brought to enforce the rates, charges, or tariffs, they fall within the broad authority granted to the Colorado Public Utilities Commission (PUC). Because we conclude that the claims in this case were brought to enforce the rates, charges, and tariffs of a public utility, we agree with the district court that it lacked subject matter jurisdiction over the complaint. Accordingly, we affirm the district court's dismissal of the complaint.

## I.  Background

¶ 2    Plaintiff, Development Recovery Company, LLC (DRC), appeals the district court's dismissal of its complaint against the Public Service Company of Colorado, d/b/a Xcel Energy Co. (Xcel). Xcel is a utility company providing electric and gas service that is regulated by the PUC. DRC is the assignee of claims from real estate developers who entered into extension agreements with Xcel for the construction of distribution facilities to provide gas or electric service for homes in new developments.

## A. Extension Agreements

¶ 3　　Pursuant to one-page extension agreements, the developers made construction payments in an amount determined by Xcel, and Xcel constructed the facilities to deliver electricity or gas to new or planned developments.[1]  The agreements referred several times to Xcel's extension policies and specifically required that "the application and interpretation of this Agreement, including the definitions of terms used herein, shall be in accordance with [Xcel's Service Rules and Regulations, including the extension policy] on file and in effect from time to time with the Public Utilities Commission of the State of Colorado and that said Rules and Regulations constitute a part of this Agreement and are binding on the parties hereto."

---

[1] Xcel submitted two extension agreements in support of its motion to dismiss — one for indeterminate electric service and one for permanent gas service.  Because these are the only agreements in the record and there was no evidence or argument that they are not representative, we consider these two agreements representative of all the agreements that are the subject of this case.  *See Redfern v. U S W. Commc'ns, Inc.,* 38 P.3d 566, 568 (Colo. App. 2000).

¶ 4     According to the electric and gas service extension policies on file with the PUC, referred to as "tariffs,"[2] when an applicant requests electric or gas service at premises not connected to Xcel's distribution system, Xcel designates the type of service as permanent, indeterminate, or temporary, and then "construct[s] the extension with reasonable promptness in accordance with the terms of" applicable plans described in the tariffs.[3]  The tariffs provide that extension contracts are based on the estimate of the cost to construct and install the necessary facilities to provide the requested service.  Thus, Xcel is responsible for estimating the cost of materials, labor, and rights-of-way, as well as related costs such

---

[2] Public utilities are required to maintain open schedules showing rates and charges, along with factors affecting rates or service.  *See* § 40-3-103, C.R.S. 2016.  "Tariffs are the means by which utilities record and publish their rates along with all policies relating to the rates." *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo. 1998).  In support of its motion to dismiss, Xcel submitted the schedules relating to the extension of electric and gas service, which DRC had referenced in its complaint.  *See Barry v. Bally Gaming, Inc.*, 2013 COA 176, ¶ 8 (evidence outside the pleadings may be considered to resolve a challenge to subject matter jurisdiction).

[3] Although electric and gas service are covered in different tariffs, the pertinent provisions are similar.  Because the parties refer to the tariffs collectively and do not argue that any differences are pertinent, we also discuss the tariffs this way.

as trenching or tree trimming, "together with all incidental and overhead expenses."

¶ 5    These construction costs in turn are divided into two parts. First, if applicable, Xcel bears a portion of the cost in an amount listed in the tariffs — the "construction allowance."[4]  Second, the "construction payment" is the "[a]mount advanced by applicant to pay all construction costs in excess of [the] [c]onstruction [a]llowance."

¶ 6    The tariffs specifically describe if and when Xcel's portion — the construction allowance — will be credited, depending on the designated type of service.  The tariffs also explain when refunds of the construction payment could become due and how they would be calculated.

B.  DRC's Allegations in Support of Claims For Relief

¶ 7    DRC filed the complaint against Xcel alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of section 40-7-102, C.R.S. 2016, related to an unspecified number of extension

---

[4] The amount of the construction allowance provided in the tariffs changed during the period covered by the complaint.

agreements (the agreements) between developers and Xcel during the course of eighteen years.

¶ 8    Specifically, DRC alleged in support of its claims for relief that

- Xcel inflated the costs of construction;

- Xcel failed to properly credit construction allowances;

- Xcel failed to refund construction payments; and

- Xcel violated section 40-7-102 by including provisions in the agreements not permitted by the applicable tariffs.

¶ 9    Xcel moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that this matter was within the exclusive jurisdiction of the PUC.  Alternatively, Xcel argued that if the PUC did not have exclusive jurisdiction, the court should nonetheless refer the matter to the PUC under the primary jurisdiction doctrine.

¶ 10    The district court agreed with Xcel on both grounds and dismissed the case.

¶ 11    DRC appeals the trial court's dismissal, arguing that the district court, not the PUC, has exclusive subject matter jurisdiction over DRC's common law claims.

## II.  Legal Standards

¶ 12    In considering a district court's dismissal of a claim under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo. *Auxier v. McDonald*, 2015 COA 50, ¶ 9; *City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076, 1078 (Colo. App. 2006).

¶ 13    If subject matter jurisdiction is challenged, the plaintiff has the burden of proving it. *Associated Gov'ts of Nw. Colo. v. Colo. Pub. Utils. Comm'n*, 2012 CO 28, ¶ 7; *City of Aspen*, 143 P.3d at 1078. Evidence outside the pleadings may be considered. *City of Aspen*, 143 P.3d at 1078. The trial court considers the facts alleged and the relief requested to determine the substance of the claim and whether the court has subject matter jurisdiction. *Id.* at 1078-79 ("We are not bound by the form in which the plaintiff asserts its claim, but rather it is the facts alleged and the relief requested that decide the substance of a claim, which in turn is determinative of the existence of subject matter jurisdiction." (quoting *City of Boulder v. Pub. Serv. Co.*, 996 P.2d 198, 203 (Colo. App. 1999))).

### III.  Public Utilities Commission (PUC)

¶ 14    The General Assembly is empowered by the Colorado Constitution to designate to an agency "all power to regulate the

6

facilities, service and rates and charges therefor" for an entity operating as a public utility in Colorado. Colo. Const. art. XXV.

¶ 15   Under section 40-3-102, C.R.S. 2016, the legislature designated the PUC as the regulatory body. Specifically,

> [t]he power and authority is hereby vested in the public utilities commission of the state of Colorado and it is hereby made its duty to adopt all necessary rates, charges, and regulations to govern and regulate all rates, charges, and tariffs of every public utility of this state to correct abuses; to prevent unjust discriminations and extortions in the rates, charges, and tariffs of such public utilities of this state; to generally supervise and regulate every public utility in this state; and to do all things, whether specifically designated in articles 1 to 7 of this title or in addition thereto, which are necessary or convenient in the exercise of such power, and to enforce the same by the penalties provided in said articles through proper courts having jurisdiction.

§ 40-3-102.

¶ 16   "The Public Utilities Commission is a legally constituted administrative body with exclusive jurisdiction in its constituted field." *Intermountain Rural Elec. Ass'n v. Colo. Cent. Power Co.*, 135 Colo. 42, 48, 307 P.2d 1101, 1104 (1957). The legislature has also provided that complaints may be made to the PUC, and it has

7

outlined the procedures to be followed to resolve complaints.  *See* §§ 40-6-108, -109, C.R.S. 2016.

## IV.  Analysis

¶ 17    The PUC has exclusive jurisdiction over claims for the enforcement of tariffs.  *See AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo. 1998).  "[T]he proper application of rates and tariffs is within the regulatory authority of the PUC."  *Id.*; *see also Associated Gov'ts*, ¶ 7 (the legislature may limit the constitutional grant of general subject matter jurisdiction to the district courts); *City of Aspen*, 143 P.3d at 1081 ("Determining whether defendants comply with the PUC requirements and fashioning a remedy for any violation is within the PUC's authority.").  Thus, although DRC seeks to distinguish *City of Aspen* and *City of Boulder* as cases addressing ratemaking, the PUC's jurisdiction is more expansive, including the application of and compliance with tariffs.  *See AviComm*, 955 P.2d at 1031; *City of Aspen*, 143 P.3d at 1081.

¶ 18    DRC asserts that the trial court erred in concluding that the substance of its claims is merely the enforcement of tariffs.  We disagree.

¶ 19 DRC relies primarily on its own characterization of the claims it pled — breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of section 40-7-102 — arguing that only the district court has jurisdiction over such claims. However, we are not bound by the labels of the causes of action pled; rather, we must consider the substance of the claims asserted. *See City of Aspen*, 143 P.3d at 1078-79; *City of Boulder*, 996 P.2d at 203.

¶ 20 We turn next to DRC's complaint.

A. Inflating Estimated and Actual Costs of Construction

¶ 21 DRC claims that Xcel breached the agreements and the implied covenant of good faith and fair dealing by inflating the estimated and actual costs of construction. Although the agreements provide the amount of the required construction payments, the factors used to determine the costs of construction are addressed by the tariffs. Thus, assessment of whether those charges are excessive is within the PUC's jurisdiction. *See* § 40-3-102 (empowering PUC to adopt and enforce regulations to govern and regulate public utilities; "to correct abuses; to prevent unjust discriminations and extortions . . . ; to generally supervise and

9

regulate every public utility in this state; and to do all things, . . . which are necessary or convenient in the exercise of such power"); *City of Boulder*, 996 P.2d at 205 (district court lacked subject matter jurisdiction over claim for breach of duty of good faith and fair dealing for improperly calculating payments due, where the parties' agreements incorporated amounts set forth in the PUC-approved tariff and the utility had to calculate the rate for its tariff filing in accordance with PUC's methodology and other regulations).

### B. The Treatment of Construction Allowances

¶ 22 DRC takes issue with Xcel's treatment of construction allowances. However, the only mention of construction allowances in the agreements is that "[n]othing in this Agreement shall be construed to waive the right," if any, of a construction allowance or refund thereof "associated with distribution and/or service lateral installations pursuant to the Rules and Regulations currently on file with the Public Utilities Commission." The agreements merely recognize that developers might be entitled to a construction allowance as provided by the tariffs. While DRC's complaint alleges that Xcel exercised discretion in classifying the service for each

contract (which impacts whether and when a construction allowance is credited), the tariffs define the classification of service. DRC's claim that Xcel failed to properly credit construction allowances is, therefore, also a claim for enforcement of the tariffs. *See City of Aspen*, 143 P.3d at 1079-80 (concluding that, although the plaintiff attempted to re-characterize claim to avoid PUC jurisdiction, matters within the PUC's exclusive jurisdiction were still "inextricably intertwined" with the claims).

### C. Failure to Refund Construction Payments

¶ 23 DRC claims that Xcel failed to refund construction payments. Here, again, the agreements explicitly invoke the tariffs to describe Xcel's obligations: "Any possible refunds [of the Construction Payment] will be made in accordance with the terms and conditions of [Xcel's extension policy]. This policy is on file with the Public Utilities Commission . . . ." Once again, DRC's claim is for enforcement of the tariffs, and is thus within the PUC's jurisdiction. *See id.*

### D. Violation of Section 40-7-102

¶ 24    Finally, DRC claims that Xcel also violated section 40-7-102 by including provisions in the agreements not permitted by the applicable tariffs.  Section 40-7-102(1) provides as follows:

> In case any public utility does, causes to be done, or permits to be done any act, matter, or thing prohibited, forbidden, or declared to be unlawful, or omits to do any act, matter, or thing required to be done, either by the state constitution, any law of this state, or any order or decision of the commission, such public utility shall be liable to the persons or corporations affected thereby for all loss, damage, or injury caused thereby or resulting therefrom. . . .  An action to recover such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

¶ 25    Yet, even if DRC has a cause of action under section 40-7-102, exhaustion of administrative remedies before the PUC is required. *See City of Aspen,* 143 P.3d at 1081-82 ("Even if Aspen were correct [that this section supports an action against a utility for violation of the Colorado Consumer Protection Act (CCPA)], it has failed to exhaust remedies before the PUC and therefore cannot at this time invoke them to support its CCPA claims. . . .  [T]he PUC would still be the proper forum for first determining whether defendants violated its regulations."); *City of Boulder,* 996 P.2d at 206-07

12

(where plaintiffs sought damages under section 40-7-102(1), the district court properly dismissed because, although the statute creates a private cause of action for damages resulting from conduct of a regulated utility which violates state law, subject matter jurisdiction does not exist in the district court unless and until administrative remedies have been exhausted as provided in sections 40-6-108 and 40-6-109).  DRC did not allege or establish that it had exhausted administrative remedies.  *See* § 40-6-115, C.R.S. 2016 (providing for district court review of a final decision by the PUC).

### E.  Alleged Damages

¶ 26     Beyond the particular causes of action alleged, DRC additionally asserts that the district court must have jurisdiction because only the district court can award the relief DRC sought. We disagree.

¶ 27     "Subject matter jurisdiction concerns 'the court's authority to deal with the class of cases in which it renders judgment.'" *Monaghan Farms, Inc. v. City & Cty. of Denver*, 807 P.2d 9, 18 (Colo. 1991) (quoting *Closed Basin Landowner's Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 636 (Colo. 1987)).  "A court has

13

jurisdiction of the subject matter 'if the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority.'" *Closed Basin Landowner's Ass'n*, 734 P.2d at 636 (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo. 1986)). Where, as here, the power to determine claims regarding the enforcement of tariffs has been vested in the PUC in the first instance, DRC cannot confer subject matter jurisdiction on the district court simply by requesting relief in the form of damages. Subject matter jurisdiction "either exists or it does not. The parties cannot confer subject matter jurisdiction upon the court, nor may the court confer it upon itself." *Cornstubble v. Indus. Comm'n*, 722 P.2d 448, 450 (Colo. App. 1986) (quoting *Sanchez v. Straight Creek Constructors*, 41 Colo. App. 19, 21, 580 P.2d 827, 829 (1978)).

¶ 28    Nonetheless, we note that the PUC has authority to order reparations where excessive charges have been collected by a public utility for any product or service:

> When complaint has been made to the commission concerning any rate, . . . and the commission has found, after investigation, that the public utility has charged an excessive or discriminatory amount . . . the commission

14

> may order that the public utility make due reparation to the complainant therefor, with interest from the date of collection, provided no discrimination will result from such reparation.

§ 40-6-119(1), C.R.S. 2016. Distilled to their essence, DRC's claims here are that the developers were ultimately required to foot more of the bill for the utility extensions than was due according to the terms of the tariffs. As a result, reparations for excessive charges could be an appropriate remedy in this case. *See Peoples Nat. Gas Div. of N. Nat. Gas Co. v. Pub. Utils. Comm'n*, 698 P.2d 255, 262-63 (Colo. 1985) (PUC had statutory authority to award reparations to utility customers for overbilling); *Village of Evergreen Park v. Commonwealth Edison Co.*, 695 N.E.2d 1339, 1343 (Ill. App. Ct. 1998) ("The fact that the plaintiff labels its action a breach of contract action is not dispositive . . . . Irrespective of that label, it is apparent that the plaintiff is seeking a refund of part of the charges it paid the defendant and, consequently, plaintiff is alleging a claim for reparations.") (citations omitted).[5]

---

[5] DRC also asserts that the district court must have jurisdiction because it is the only venue in which DRC can be afforded a jury trial, as demanded in the complaint. A demand for a jury trial,

15

¶ 29     Considering the allegations in the complaint in conjunction with the evidence submitted on the issue of subject matter jurisdiction, we agree with the district court that DRC failed to carry its burden to establish subject matter jurisdiction in the trial court.[6]

## V.  Conclusion

¶ 30     The judgment is affirmed.

JUDGE TAUBMAN and JUDGE LICHTENSTEIN concur.

---

however, does not go to the substance of the claim.  *See City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076, 1078 (Colo. App. 2006) (consider the facts alleged and the relief requested to determine the substance of the claim and whether the court has subject matter jurisdiction).  We will not permit a party to circumvent the jurisdiction of the PUC simply by including a demand for jury trial in the complaint.

[6] Nor are we persuaded by DRC's reliance on *Great Western Sugar Co. v. Northern Natural Gas Co.*, 661 P.2d 684, 690 (Colo. App. 1982).  The division in *Great Western Sugar* considered whether the trial court erred by declining to exercise its discretion to refer issues to the Federal Energy Regulatory Commission under the doctrine of primary jurisdiction.  *Id.*  Because we conclude that the district court lacked subject matter jurisdiction, we do not reach the issue of discretionary referral under the doctrine of primary jurisdiction, and *Great Western Sugar* is inapplicable.